HARDING UNIVERSITY, Richard Gibson, W.W. McAllister III, and Louraine Wilborn Trust Plaintiffs,

v.

CONSULTING SERVICES GROUP, L.P., Kurt Voldeng, Roy Moore, Checkers Simon Rosner, David Knee, Sam Chalabi, Sanford Holzer, Holzer, Hum & Jacoby, L.L.P., Thomas J. Dwyer & Associates, Thomas J. Dwyer, Fishman & Merrick, P.C., and Matthew Wayne, Defendants.

No. 98 C 1762.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 29, 1998.

---

Edward G. Toptani, New York, NY, for Plaintiffs.

Stephen Patrick Bedell, Timothy G. McDermott, Scott M. Murray, Gardner, Carton & Douglas, Chicago, IL, for Defendant Consulting Services Group LP.

Mark C. Harwell, Morris & Campbell, Houston, TX, Kevin T. Keating, Mark E. Shure, Ltd., Chicago, IL, for Defendant David Knee.

Michael H. King, George J. Spathis, Ross & Hardies, P.C., Chicago, IL, Michael W. Mengis, Houston, TX, for Defendant Sam Chalabi.

George J. Manos, Lisle, IL, for Defendants Sanford Holzer, Holzer Hum & Jacoby.

Gary A. Graso, Ungaretti & Harris, Chicago, IL, for Defendants Thomas J. Dwyer & Assoc., Thomas J. Dwyer.

George William Spellmire, David Matthew Schultz, John Matthew Foley, Matthew R. Henderson, Hinshaw & Culbertson, Chicago, IL, for Defendant Fishman & Merric.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiffs, Harding University, Richard Gibson, W.W. McAllister, III, and Louraine Wilborn Trust ("plaintiffs"), sued Consulting Services Group, L.P. ("CSG"), Kurt Voldeng, Roy Moore, Checkers Simon Rosner, David Knee, Sam Chalabi, Sanford Holzer, Holzer, Hum & Jacoby, L.L.P. ("HHJ"), Thomas J. Dwyer, Thomas J. Dwyer & Associates, Fishman & Merrick, P.C., and Matthew Wayne ("defendants"), alleging violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Sections 12(2) and 15 of the Securities Exchange Act of 1933, the Texas Securities Act, the Arkansas Securities Act, the Tennessee Blue Sky Law, breach of fiduciary duty, common law fraud, negligence, negligent misrepresentation, and professional negligence.[1] Mr. Knee moves to dismiss the complaint for failure to state a cause of action. Mr. Holzer and HHJ move to dismiss the complaint for lack of personal jurisdiction. For the following reasons, the motions are granted in part and denied in part.

### Background [2]

Harding University is a not-for-profit association located in Arkansas. Mr. Gibson, Mr. McAllister, and Ms. Trust are residents of Texas.

In January, 1996, the plaintiffs, through their agent, Joe Hurley, retained CSG to act as their investment advisor to select and recommend hedge funds for investment. (Comp.¶ 26). The plaintiffs allege that in December, 1995, CSG entered into an agreement with the Theta Group, L.L.C. ("Theta Group"), to recommend and promote the Theta Group to potential public investors as a suitable hedge fund investment. (Comp. ¶ 24). The plaintiffs believe that the Theta Group agreed to compensate CSG for each party CSG induced to invest in the Theta Group. *Id.* CSG and its employees recommended that the plaintiffs invest in the Theta Group.

The plaintiffs allege that, through telephone conversations with Mr. Hurley, CSG and its employees made a variety of misrepresentations regarding the Theta Group. (Comp.¶¶ 27–28). Among the alleged misrepresentations were the profitability of the Theta Group and the amount of due diligence CSG performed. *Id.* The plaintiffs also allege that on January 17, 1996, CSG sent them various correspondence analyzing the Theta Group's performance history between January, 1993, and December, 1995. The plaintiffs believe CSG knew the correspondence was fictitious since the Theta Group did not exist in 1993, 1994, or 1995. (Comp. ¶ 29).

On February 22, 1996, the Theta Group sent Mr. Gibson the Theta Group Offering Memorandum. All of the plaintiffs eventually received a copy of the Theta Group's Of-

---

1. CSG, Mr. Voldeng, and Mr. Moore were dismissed from the case by order dated September 9, 1998.

2. On a motion to dismiss, the court assumes the truth of all alleged facts and draws all inferences in favor of the plaintiff. *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991).

fering Memorandum. (Comp.¶¶ 30–31). The plaintiffs allege that the Offering Memorandum contained numerous material misrepresentations. Among the misrepresentations were the Theta Group's profitability and the qualifications of its employees. (Comp.¶ 32). Additionally, the plaintiffs allege the Offering Memorandum contained numerous material omissions, including the extent of the Theta Group's association with the Chicago Board Options Exchange ("CBOE") and previous CBOE rule violations by Theta Group employees. (Comp.¶ 36).

The plaintiffs further allege that Checkers Simon Rosner is a partnership of certified public accountants that the Theta Group retained to provide accounting, auditing, and consulting services. (Comp.¶ 37). Checkers Simon Rosner allegedly conducted an examination of the Theta Group's January, 1993, to March, 1995 performance records to produce a document describing the Theta Group's profits. The plaintiffs allege the document contained entirely fictitious information since the Theta Group did not exist in 1993, 1994, and 1995. (Comp.¶¶ 37–38).

The plaintiffs state that in January, 1996, the Theta Group advised Mr. Hurley that David Knee and Sam Chalabi could provide favorable references for the Theta Group. (Comp.¶ 39). The plaintiffs allege that both Mr. Chalabi and Mr. Knee misrepresented that they invested in the Theta Group in 1995 and that their investments did well. (Comp. ¶¶ 40–41).

Between February 29, 1996, and May 1, 1996, the plaintiffs invested $975,000 with the Theta Group. (Comp.¶¶ 43–47). In June, 1996, the Theta Group retained Sanford Holzer and HHJ to provide accounting services. The plaintiffs allege the document HHJ produced contained entirely fictitious information. The document was distributed to Mr. Hurley and the plaintiffs in July, 1996. (Comp.¶¶ 47–48).

The plaintiffs allege that between March, 1996, and October, 1996, the Theta Group misrepresented that its monthly returns were positive when, in fact, the Theta Group's value decreased approximately 30% during that period. The plaintiffs believe that by December, 1996, the Theta Group

fund lost 70% of the value it had in January, 1996. (Comp.¶¶ 50–51).

In December, 1996, the Securities and Exchange Commission filed suit against the Theta Group and its employees alleging various violations of the securities laws and seizing the Theta Group's investor funds. The plaintiffs believe they have lost approximately $650,000 of their initial $975,000 investment. (Comp.¶¶ 54–55).

### David Knee

David Knee moves to dismiss the plaintiffs' complaint for failure to state a claim. The plaintiffs claim that in January, 1996, Mr. Knee, a New York resident, telephonically spoke with Mr. Hurley and informed Mr. Hurley he invested in the Theta Group in 1995 and the investment did well. (Comp. ¶ 40). The plaintiffs allege Mr. Knee did not, in fact, invest in the Theta Group. (Comp. ¶ 42).

### A. Securities Fraud.

■■ Mr. Knee argues the plaintiffs have not pled fraud with particularity. The plaintiffs have pled an alleged misrepresentation by Mr. Knee to Mr. Hurley in January, 1996. Beyond this, however, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Under this standard, "the requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rehm v. Eagle Fin. Corp.*, 954 F.Supp. 1246, 1253 (N.D.Ill.1997).

The complaint is devoid of any allegation of motive. Thus, the plaintiffs must rely on "strong circumstantial evidence" to prove scienter. The plaintiffs allege Mr. Knee informed Mr. Hurley he invested in the Theta Group in 1995 and did well. (Comp.¶ 40). The plaintiffs further allege that Mr. Knee did not invest in the Theta Group and, in fact, the Theta Group did not exist in 1995.

Taking the allegations as true, this is a sufficient allegation of scienter.

 Mr. Knee argues that the plaintiffs' Rule 10b–5 claim must be dismissed because the information he provided was not material. For a misrepresentation to be material, there must be a "substantial likelihood" that the information "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Whether a misrepresentation is material is a question of fact for the jury. *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1233–34 (7th Cir.1988). Mr. Knee's only alleged misrepresentation was that he did well investing in the Theta Group in 1995. The plaintiffs allege this endorsement was material and was relied upon in making investments in the Theta Group. (Comp. ¶¶ 43–46, 59). The plaintiffs argue that if they had known Mr. Knee did not invest in the Theta Group they would have been leery of the Theta Group's representations since it would have appeared the Theta Group fabricated a list of investors.

Mr. Knee argues that there were so many other alleged material misrepresentations that no reasonable investor could have attached significance to his comments. The plaintiffs have properly pled materiality. This is a factual issue and it is premature to dismiss the complaint on this ground.

 Mr. Knee also argues the plaintiffs could not have relied upon his representations. "[R]eliance exists where there is a causal connection between the misrepresentation or omission and the plaintiff's harm." *Coronet Ins. Co. v. Seyfarth*, 665 F.Supp. 661, 669 (N.D.Ill.1987) (citations omitted). The plaintiffs allege they relied on Mr. Knee's representations in making their investment. (Comp.¶¶ 43–46). The plaintiffs argue they would not have invested in the Theta Group had Mr. Knee told the truth. This is a sufficient pleading of reliance.

 Mr. Knee also argues the plaintiffs have not properly pled causation. Under Rule 10b–5 a plaintiff must plead both "transaction causation" and "loss causation." *LHLC Corp. v. Cluett, Peabody & Co., Inc.*, 842 F.2d 928, 931 (7th Cir.1988). Transaction causation means "that the investor would not have engaged in the transaction had the other party made truthful statements at the time required." *Id.* Loss causation means "that the investor would not have suffered a loss if the facts were what he believed them to be." *Id.* The plaintiffs have pled "transaction causation" by stating they relied on Mr. Knee's misrepresentation and would not have invested in the Theta Group absent the misrepresentation. (Comp.¶¶ 43–46, 66).

 "To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir.1997). It is necessary to allege that "but for the circumstances that the fraud concealed, the investment ... would not have lost its value." *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683 (7th Cir.1990). It is not sufficient "for an investor to allege only that it would not have invested but for the fraud." *Caremark, Inc.*, 113 F.3d at 648 (citation omitted). The plaintiffs allege they relied on Mr. Knee's misrepresentation to invest in the Theta Group and would not have invested absent Mr. Knee's misrepresentations. (Comp.¶¶ 43–46, 66). This is sufficient to plead "loss causation." Accordingly, the plaintiffs' Rule 10b–5 claim against Mr. Knee will not be dismissed.[3]

*B. State Securities Acts.*

 The plaintiffs have included Mr. Knee as a defendant in their claims under the Texas Securities Act, Arkansas Securities

---

**3.** Mr. Knee argues the plaintiffs' Texas common law fraud claim must be dismissed for the same reasons the securities fraud claims must be dismissed. Texas law does not bifurcate the causation pleading requirements. The plaintiffs need only allege they suffered an injury based on Mr. Knee's representations. This is the equivalent of "transaction causation." The plaintiffs have properly pled "transaction causation" and thus, their common law fraud claim against Mr. Knee will not be dismissed.

Act, and Tennessee Securities Act. These acts apply to individuals who offer or sell securities. Tex.Rev.Civ. Stat. Ann. art. 581–33; Ark.Code Ann. § 23–42–103; Tenn.Code Ann. § 48–2–122. There is no allegation in the complaint that Mr. Knee was either an offerer or seller of the Theta Group security. While the plaintiffs argue in their brief that the Theta Group recruited Mr. Knee to be an active seller of securities, this inference cannot reasonably be drawn from the allegations in the complaint. Accordingly, the plaintiffs claims against Mr. Knee under the Texas Securities Act, the Arkansas Securities Act, and Section 48–2–122 of the Tennessee Securities Act are dismissed.

■ Section 48–2–121 of the Tennessee Securities Act applies to "any person," who, in connection with the sale of a security in Tennessee, makes an untrue statement of material fact. Thus, this section encompasses more than just offerers and sellers of securities. Mr. Knee made his statements to Mr. Hurley. The complaint does not state and it cannot be inferred that Mr. Knee was aware Mr. Hurley was the plaintiffs' agent. Nor is there any basis for a connection between Mr. Knee and Tennessee. Mr. Knee is from New York. Mr. Hurley is from Georgia. The plaintiffs are from Texas and Arkansas. Mr. Knee was recommended to the plaintiffs by the Theta Group, a New Jersey limited liability corporation. In sum, there is no jurisdictional basis in the complaint for a Tennessee Securities Act claim against Mr. Knee. Accordingly, the Section 48–2–121 claim is dismissed.

### C. Negligent Misrepresentation.

■ Mr. Knee argues the plaintiffs cannot make out a claim for negligent misrepresentation because the alleged false representation was not made "in the course of his business, or in a transaction in which he has a pecuniary interest...." *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). There is no allegation that Mr. Knee was either working in the course of his business or had any pecuniary interest at stake when he spoke to Mr. Hur-

ley. The plaintiffs argue Mr. Knee was selling securities for the Theta Group, but the complaint does not contain any such allegation. Accordingly, the plaintiffs' negligent misrepresentation claim against Mr. Knee is dismissed.

### Holzer and HHJ

■ Mr. Holzer and HHJ ("Holzer Defendants") move to dismiss the complaint for lack of personal jurisdiction. Mr. Holzer is a resident of New Jersey and HHJ is a limited liability partnership organized under the laws of New Jersey with its principal place of business in New Jersey. The plaintiffs allege the Holzer Defendants were retained by the Theta Group to provide accounting, auditing, and consulting services. (Comp.¶ 47). The plaintiffs believe that the Holzer Defendants, after conducting an examination of the Theta Group, produced an entirely fictitious document describing, among other things, the Theta Group's equity, net trading profits, and rate of return. The plaintiffs allege they received the Holzer Defendants' document in July, 1996, and, based on the document, maintained their investment in the Theta Group. (Comp.¶¶ 47–48).

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction is proper. *United States Gypsum Co. v. All Tank Sales & Supply Co.*, 977 F.Supp. 1340, 1342 (N.D.Ill.1997). In considering a motion to dismiss for lack of personal jurisdiction, a court may consider affidavits submitted by either party, but factual disputes must be resolved in favor of the plaintiff. *Id.* (citation omitted).

■ In a diversity action, a federal court in Illinois has personal jurisdiction over a party if the Illinois state court would have personal jurisdiction. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir. 1990).[4] The Illinois long-arm statute permits *in personam* jurisdiction over a party to the extent allowed "by the Illinois Constitution and the Constitution of the United States."

---

4. The plaintiffs' complaint alleges both federal question and diversity jurisdiction. The claims against the Holzer Defendants are based solely on state law.

735 ILCS 5/2–209(c). The Illinois due process guarantee is not necessarily coextensive with the federal due process guarantee. *Giddens v. Steak & Ale of Ill., Inc.*, 994 F.Supp. 942, 944 (N.D.Ill.1998) (citation omitted).

## A. Federal Due Process.

The due process inquiry has two parts. First, the defendant must have "purposely established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). These minimum contacts must "result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475, 105 S.Ct. 2174 (citations omitted) (emphasis in original). The defendant's connection to the State must be substantial enough that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In the second part of the inquiry, the court must consider if, in light of the minimum contacts and other considerations, the exercise of personal jurisdiction would offend " 'traditional notions of fair play and substantial justice.' " *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The "other considerations" that the court must take into account include "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

██ *In personam* jurisdiction may be either specific or general. General jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction applies "when the defendant's contacts with the forum are related to the controversy underlying the litigation." *Glass v. Kemper Corp.*, 930 F.Supp. 332, 339 (N.D.Ill.1996). Since there is no evidence the Holzer Defendants have continuous general business contacts with Illinois, the plaintiffs must show specific jurisdiction exists in this case.

The Holzer Defendants present the affidavit of Mr. Holzer. Mr. Holzer states the Holzer Defendants: (1) have not lived or been employed in Illinois in over forty years; (2) have never owned real property in Illinois; (3) have not had a bank account in Illinois in over forty years; (4) do not engage and have not engaged in business in Illinois under their names or under any assumed names or other business entity; (5) do not maintain a place of business in Illinois and do not have employees, servants, or agents in Illinois; and (6) do not advertise or otherwise solicit business in Illinois. (Holzer Aff.).

In response, the plaintiffs argue that the Theta Group has an office in Chicago and that the Holzer Defendants do not deny they did business with the Theta Group. The only exhibit attached to the plaintiffs' response is a letter sent from Mr. Holzer to the Theta Group's Chicago office. (Pl.Ex. A). The letter is a summary of the Theta Group's 1995 transactions. The plaintiffs argue the letter proves the Holzer defendants had a business relationship with Illinois and committed a tort in Illinois. There is, however, no affidavit attached to the letter that explains the information in the letter or why it was sent to the Theta Group. The letter, standing alone, says nothing about the Holzer Defendants' relationship with the Theta Group or Illinois.

Mr. Holzer submitted a supplemental affidavit in response to the plaintiffs' allegations regarding the letter. The letter is addressed to Scott Bell. Mr. Holzer states that Mr. Bell, from Mr. Bell's New Jersey office, contacted him to provide accounting services for several entities, including the Theta Group. The contract between Mr. Bell and the Holzer Defendants was entered into in New Jersey. All of the work performed for Mr. Bell occurred in New Jersey. The only contact the Holzer Defendants had with the Theta Group was through Mr. Bell in New Jersey. The

Holzer Defendants were paid for their services by a check drawn on Mr. Bell's personal account in New Jersey. According to Mr. Holzer, the letter attached to the plaintiffs' response, which simply outlines the Holzer Defendants' services for Mr. Bell, was sent to Mr. Bell in Chicago at Mr. Bell's request. (Holzer Supp. Aff.).

Based on the evidence in this case, the Holzer Defendants have not established "minimum contacts" with Illinois to the extent they could reasonably anticipate being haled into court in Illinois. The Holzer Defendants have not "purposefully availed" themselves of the privilege of conducting activities in Illinois. The only evidence of any contact between the Holzer Defendants and Illinois is a single letter that could not possibly have made litigation in Illinois foreseeable. Requiring the Holzer Defendants to defend this suit in Illinois would offend "traditional notions of fair play and substantial justice." *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1278 (7th Cir.1997) ("Potential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions."). Accordingly, the Holzer Defendants' motion to dismiss for lack of personal jurisdiction is granted.[5]

## Conclusion

For the foregoing reasons, Mr. Knee's motion to dismiss is granted in part, and the Holzer Defendants' motion to dismiss is granted.

---

**5.** The plaintiffs request discovery so that they may gather facts to prove personal jurisdiction over the Holzer Defendants. I will allow plaintiffs 90 days to do so. If they obtain facts that show greater contact with Illinois than shown by the evidence thus far, they may file an amended complaint.