151 So.2d 778

ANNISTON SPORTSWEAR COR-
PORATION

v.

STATE of Alabama.

3 Div. 5.

Supreme Court of Alabama.

April 4, 1963.

MacDonald Gallion, Atty. Gen., and Herbert I. Burson, Jr., Asst. Atty. Gen., for appellee.

Wilson & Propst, Anniston, for appellant.

GOODWYN, Justice.

The appellant (taxpayer), a foreign corporation qualified to do business in Alabama, appealed to the circuit court of Montgomery County, in equity, pursuant to Code 1940, Tit. 51, § 140, from a final franchise tax assessment levied against it by the State Department of Revenue. under the provisions of Code 1940, Tit. 51, § 348, as amended by Act No. 74, appvd. April 13, 1955, effective May 1, 1955, Acts 1955, Vol. I, p. 191. (Section 348 was further amended

by Act No. 912, appvd. Sept. 8, 1961, effective for tax years beginning on and after January 1, 1964, Acts 1961, Vol. II, p. 1462.

———◆———

This amendment is of no significance in this case.) The circuit court rendered a decree approving the assessment as made by the Department of Revenue. This appeal followed.

A part of the testimony was heard orally by the trial court and a part was taken by deposition.

The annual franchise tax on foreign corporations is fixed at "two and one-half dollars ($2.50) on each one thousand dollars ($1,000.00) of the *actual amount of capital employed in this state.*" [Emphasis supplied.] Code 1940, Tit. 51, § 348, as amended, supra; Constitution 1901, § 232.

The assessment increased "the actual amount of capital employed in this state" by appellant, as shown by its franchise tax return for 1960, in the following respects:

(1) By increasing the valuation of appellant's leasehold improvements, machinery and equipment, and furniture and fixtures, by $41,553.

(2) By adding to such capital the following: A $75,000 note receivable due from a non-resident of Alabama, payable to appellant and held by it at its office in Michigan City, Indiana; $12,222.17 on deposit in the Merchants National Bank of Michigan City, Indiana; and $3,871.79 in miscellaneous receivables held by appellant at its office in Michigan City.

Appellant was incorporated under the laws of Indiana in September, 1958. Its principal office is located in Michigan City, Indiana. Two of its three directors maintain their business offices and personal residences in Michigan City. The third director maintains his office and residence in Chicago, Illinois. Its president, vice president, treasurer, secretary, assistant secretary and assistant treasurer, being all of its officers, reside in Michigan City, as do also all of its stockholders. The directors' and stockholders' meetings are held in Michigan City. As we understand the evidence, the only production plant operated by appellant is located in Anniston, Alabama, where it manufactures men's slacks. It does work for four accounts, all located outside of Alabama.

Apparently, all of appellant's activities, other than the strictly manufacturing operations in Anniston, are conducted from its office in Michigan City. All administrative and control functions are performed at Michigan City, including the formulation of administrative policies, the determination of productive capacity, the setting of prices, the acceptance of orders, the purchasing of all raw materials, the preparation of production orders and cutting tickets, and the determination of salaries. Also, payment of the payroll for all supervisory personnel working in Anniston, as well as appellant's officers, is made from the Michigan City office. All such payments are made by check drawn against appellant's account maintained at the Merchant's National Bank in Michigan City. Appellant maintained two bank accounts, one in Michigan City and one in Anniston. On the law day for determining the amount of franchise tax due, the amount on deposit in the Anniston Bank was $17,823.00 and in the Michigan City bank $12,222.17. There is no dispute that the amount on deposit in the Anniston bank was capital employed in Alabama. The funds deposited in the Michigan City bank originated in Michigan City from payments there made to appellant by Jaymar-Ruby, Inc., one of appellant's principal customers. Such payments were made by checks signed by one of Jaymar-Ruby, Inc.'s officers in Michigan City and deposited directly into appellant's Michigan City bank account.

The $75,000 note, above referred to, represented a loan made by appellant to Jaymar-Ruby, Inc., dated September 10, 1959, payable on demand at Michigan City and bearing interest at 4½% per annum. This note was executed at Michigan City by the president of Jaymar-Ruby, Inc. The loan

was made by check drawn by appellant's president on appellant's Michigan City bank account. The note was paid on December 12, 1959. The evidence establishes that the money represented by said note was not necessary to meet the day to day operations of appellant.

Appellant's fiscal year was from October 1 to September 30. Its franchise tax return was based on balance sheet figures as of September 30, 1959.

The leasehold improvements, in good part, dated back to 1953. They consist principally of a sprinkler system installed by appellant's predecessor corporation, electrical work, air-conditioning and air-cooling systems, and shelving. These items are affixed to the building structure and cannot be moved upon termination of the lease. They are carried by appellant as assets "solely for tax purposes, where we are writing it off over a period of years," and were included by appellant in its franchise tax return at $14,854. The Department of Revenue adjusted this upward to $17,618.

Appellant's machinery and equipment were included in its return at $50,251, which the Department of Revenue raised to $86,-667.

Appellant's furniture and fixtures were listed in its return at $4,813, which was raised by the Department of Revenue to $7,186. The furniture and fixtures consist of desks and general office equipment acquired between 1949 and 1955 by appellant's predecessor corporation, and taken over by appellant upon its incorporation in 1958.

(1)

The evidence as to the value, for franchise tax purposes, of appellant's leasehold improvements, machinery and equipment, and furniture and fixtures, is in conflict. The trial court, after considering such conflicting evidence, part of which was heard ore tenus, agreed to the valuations as contended for by the Department of Revenue. We see no basis for interfering with that decision.

Some suggestion is made, but apparently not seriously insisted on, that since the leasehold improvements will remain as a part of the building structure upon termination of appellant's lease, such improvements have no market value, insofar as appellant is concerned, and, therefore, should not be considered as capital employed by it in Alabama. The fact that appellant sees fit to carry such improvements on its books as assets and depreciates them for tax purposes, would seem to dispel any notion that such improvements are not part of appellant's capital being employed in Alabama. As already noted, appellant included the leasehold improvements in its franchise tax return as a part of its capital employed in Alabama, but at a figure lower than that assessed by the Department of Revenue.

(2)

Appellant's argument is addressed to its assignment of error challenging the inclusion of the $75,000 note in the franchise tax base. The assignments challenging the inclusion of the Michigan City bank account and the miscellaneous receivables in the franchise tax base must be considered as waived.

We are at the conclusion it was error to include the amount of the note in the tax base.

The note was included on the theory that appellant was commercially domiciled in Alabama. As the state's one witness testified: "The courts have held that where the corporation was commercially domiciled in Alabama that any amounts of cash were includable, as this Alabama Textile Products cash in the Chicago bank for example." This witness further testified that although the note was not used in appellant's operation within the State of Alabama, "it rested within Alabama as an intangible." Apparently, the state's position was, and is, that the holding in Alabama Textile Products Corporation v. State, 263 Ala. 533, 83 So.2d 42, is decisive of the question in its favor.

In that case it was held that an "intangible may be taxed at the domicile of the owner or at the commercial domicile of a corporation where the intangible is employed or used"; and that the Alabama Textile Products Corporation, while incorporated in Delaware, had its commercial domicile in Andalusia, Alabama. Essentially, the basis for the holding that the corporation's commercial domicile was in Andalusia was the following:

"In the case of Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 778, 80 L.Ed. 1143 * * * the corporation was a Delaware corporation but had its commercial domicile or chief place of business at Wheeling, West Virginia. With respect to the establishment of a commercial domicile, the Court stated as follows:

" 'The corporation established in West Virginia what has aptly been termed a "commercial domicile." It maintains its general business offices at Wheeling and there it keeps its books and accounting records. There its directors hold their meetings and its officers conduct the affairs of the corporation. There, as appellant's counsel well says, "the management functioned." The corporation has manufacturing plants and sales offices in other states. But what is done at those plants and offices is determined and controlled from the center of authority at Wheeling. The corporation has made that the actual seat of its corporate government.'

"In the instant case the facts are substantially as set out hereinabove with respect to the commercial domicile of the Wheeling Steel Corporation. The general business office of the appellant is maintained at Andalusia, Alabama; it is there that the management functions. The corporation has manufacturing plants in Florida but what it does from those plants is controlled from the center of authority at Andalusia. The trucks of the corporation are based at Andalusia and are there given their instructions and Andalusia is the home base of the airplane. The books of the corporation are kept there and all the goods are sold from the Andalusia office and all of the accounts receivable come to that office for collection. These facts establish the fact that the appellant's commercial domicile is at Andalusia, Alabama."

█ In the case before us, appellant's "management functions" were carried on at its principal business office in Indiana, unlike the situation in the Textile Products Corporation case. We hold that appellant's commercial domicile, at the time here involved, was in Michigan City, Indiana.

The evidence, as we view it, negatives the use of the note, or the money represented by it, in appellant's activities within Alabama, so as to give the note a situs here for franchise tax purposes. We hold that the note, under the evidence, was not "capital employed in this state," within the meaning of § 232, Constitution 1901, and § 348, Tit. 51, Code 1940, as amended, supra.

Bearing on the question of the situs of intangibles, for tax purposes, is the following apt statement from United Gas Corporation v. Fontenot, 241 La. 564, 129 So.2d 776, 778–779:

"Universal recognition has been given to the general rule, established by a fiction of the law, that the situs of intangibles (with which we are here dealing) is at the legal domicile of the owner—'Mobilia sequuntur personam' (this plaintiff's, as aforeshown, is in the State of Delaware). However, the courts have also recognized an exception to such rule which is that where certain circumstances exist a state may look behind the mentioned fiction to the realities of the situation to the end that a foreign corporation receiving the benefits furnished by that governmental subdivision may be re-

quired to pay its fair and just share of the cost of such benefits. See First Bank Stock Corporation v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061, 113 A.L.R. 228. In this connection a corporation may acquire a commercial domicile outside the state of its incorporation. Thus, when it does not operate at its legal domicile and maintains in another state its principal business office, from which its management functions, the latter place is considered as its 'commercial domicile'. Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143; First Bank Stock Corporation v. State of Minnesota, supra; Arkansas Fuel Oil Corporation v. Fontenot, 225 La. 166, 72 So.2d 465; and Southern Pacific Co. v. McColgan, 68 Cal.App.2d 48, 156 P.2d 81.

"Also it has often been held that, despite the above mentioned fiction, intangibles (for tax purposes) may acquire a situs of their own in a state other than that of the legal domicile of the owning corporation when they are used as an integral part of its business conducted in such other state. This is known as the 'business situs' of the intangibles. It may be at the 'commercial domicile' of the owner, or it may exist independently of either the legal or commercial domicile of such corporation, since the business situs depends solely on the use of the intangibles in the corporation's activities and in carrying out the scheme of its corporate functions within the taxing state. Wheeling Steel Corporation v. Fox, supra; First Bank Stock Corporation v. State of Minnesota, supra; Arkansas Fuel Oil Corporation v. Fontenot, supra; Bluefields Banana Co. v. Board of Assessors et al., 49 La.Ann. 43, 21 So. 627; Commonwealth v. Columbia Gas & Electric Corporation, 336 Pa. 209, 8 A.2d 404, 131 A.L.R. 927; and State v. Pullman-Standard Car Manufacturing Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498.

See also 84 C.J.S. verbo Taxation § 116c."

For other cases holding, in effect, that a corporation's "commercial domicile" is where it maintains its principal business office, from which its management functions, see Vol. 7A, Words and Phrases, "Commercial Domicile" p. 530.

The decree is due to be reversed insofar as it included the $75,000 note in the franchise tax base and affirmed in other respects.

Affirmed in part, reversed in part, and remanded.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.