14 February 2000

FIRST DIVISION

No. 1-98-4456

 

BORDEN CHEMICALS AND PLASTICS, L.P.,

Plaintiff-Appellant,

v.

KEN ZEHNDER, Director of the Department of Revenue,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

JOANNE L. LANIGAN,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This is an action for administrative review of a final decision of Ken Zehnder, the Director of the Department of Revenue of the State of Illinois (the Department).  The circuit court entered judgment in favor of the Department and against plaintiff, Borden Chemicals & Plastics, L.P.  Plaintiff now appeals.

The issues presented are: (1) whether plaintiff is subject to the replacement tax under the Income Tax Act (replacement tax)(35 ILCS 5/201(c)(West 1996)) and (2) if so, whether plaintiff is entitled to a replacement tax Investment credit (investment credit), as provided by section 201(e) (35 ILCS 5/201(e) (West 1996)), which was generated by certain qualified property owned by the Illinois partnership, of which plaintiff is a limited partner.

The replacement tax, which went into effect in 1979, was a tax imposed on the privilege of earning or receiving income as a resident of Illinois or from Illinois sources.  The relevant language provides as follows:

"Beginning on July 1, 1979 and thereafter, in addition to such income tax, there is also hereby imposed the Personal Property Tax Replacement Income Tax measured by net income on every corporation (including Subchapter S corporations), partnership and trust, for each taxable year ending after June 30, 1979.  Such taxes are imposed on the privilege of earning or receiving income in or as a resident of this State.  The Personal Property Tax Replacement Income Tax shall be in addition to the income tax imposed by subsections (a) and (b) of this Section *** " 35 ILCS 5/201(c)(West 1996).

 The replacement tax was adopted to "replace" the revenues lost as a result of the abolition of the personal property tax by the Illinois Constitution of 1970.

Taxpayers who incur replacement tax liability are also entitled to what is known as an investment credit, under certain circumstances.  The relevant provision, during the relevant tax years, stated as follows:

"Investment credit.  A taxpayer shall be allowed a credit against the Personal Property Tax Replacement Income Tax for investment in qualified property." 35 ILCS 5/201(e) (West 1996).

The statute further defines the term "qualified property."  The definition of "qualified property" states as follows:

"(2) The term "qualified property" means property which:

(A) is tangible, whether new or used, including buildings and structural components of buildings and signs that are real property, but not including land or improvements to real property that are not a structural component of a building such as landscaping, sewer lines, local access roads, fencing, parking lots, and other appurtenances;

(B) is depreciable pursuant to Section 167 of the Internal Revenue Code, except that '3-year property' as defined in Section 168(c)(2)(A) of that Code is not eligible for the credit provided by this subsection (e);

(C) is acquired by purchase as defined in Section 179(d) of the Internal Revenue Code; 

(D) is used in Illinois by a taxpayer who is primarily engaged in manufacturing, or in mining coal or fluorite, or in retailing;  and

(E) has not previously been used in Illinois in such a manner and by such a person as would qualify for the credit provided by this subsection (e) or subsection (f)." 35 ILCS 5/201(e)(2)(1996).

Plaintiff is a Delaware limited partnership.  Plaintiff and Borden Chemicals & Plastics Management, Inc., are the two sole partners of Borden Chemicals & Plastics Operating, L.P. (Operating Partnership), a limited partnership that operates in Illinois.  The plaintiff, a limited partner, owns a 98.99% interest in the Operating Partnership; Borden Chemicals & Plastics Management, Inc., is the general partner and owns a 1.01% interest.  During the years in issue, 1988 and 1989, the Operating Partnership purchased certain assets that it placed in service in Illinois.  This "qualified property" gave rise to replacement tax investment credits of $11,913 and $53,369, respectively, for the years in issue.  Nevertheless, the Operating Partnership was not entitled to an investment credit for this qualifying property because it had no replacement tax liability.  The Operating Partnership did not have any replacement tax liability for the years 1988 and 1989, because, after subtracting the amount of income that was distributable to the partners, including plaintiff, the Operating Partnership's taxable income was zero.  Plaintiff, as a result of the distributable income it received from the Operating Partnership, was subject to the Illinois personal property tax replacement income tax (replacement tax).  Plaintiff claimed that, under these circumstances, it was entitled to use the Operating Partnership's replacement tax investment credit.  The Department rejected this claim because the assets that generated the investment credit were owned by the Operating Partnership, not the plaintiff, which owned no assets in Illinois.

  Plaintiff appeals and raises two separate arguments in a case of first impression in Illinois.  Plaintiff contends that it is entitled to an investment credit against its replacement tax liability.   Plaintiff, however, has also raised a constitutional argument, contending that the due process clause (U.S. Const., amend. XIV, § 1), and the commerce clause (U.S. Const., art.  I, § 8)  of the United States Constitution prohibit Illinois in the first instance from assessing any replacement tax on a limited partner, such as plaintiff, which has no connection with the State of Illinois other than investing in a partnership.

Before reaching the merits of these arguments, we point out that a reviewing court should consider a constitutional question only where essential to the disposition of a case.  
Bonaguro v. County Officers Electoral Board, 
158 Ill. 2d 391, 396, 634 N.E.2d 712, 714 (1994).  This is such a case.  The nonconstitutional issue of whether plaintiff can take advantage of the investment credit presumes plaintiff is responsible for the replacement tax.  Thus, regardless of our determination of this nonconstitutional issue, still unresolved will be the issue of whether plaintiff is subject to the replacement tax in the first instance.  Having answered in the affirmative that determination of the constitutional question is required, we shall address it first, since it is also the threshold question.  Should we determine that the tax is unconstitutional, that would render moot the nonconstitutional issue.

Before doing so, we note that the Department argues that plaintiff waived this issue by filing tax returns for the years in issue, by stipulating below that it was "subject to the replacement tax," and by failing to raise the issue in its protest to the Department's notice of deficiency.   Under the Administrative Review Law (735 ILCS 5/3-110 
et seq.
 (West 1996)), our scope of review encompasses all questions of law and fact presented by the record.  
Bridgestone/Firestone, Inc. v. Aldridge
, 179 Ill. 2d 141, 148, 688 N.E.2d 90, 93 (1997).  We conclude that plaintiff properly raised the constitutional issue during the administrative hearing below by including the issue in its brief.  Accordingly, we shall address the merits of plaintiff's contention. 

We shall first consider whether the tax levied on plaintiff, as a limited partner, is constitutional under the due process clause of the United States Constitution.

In  add
ition to the requirement that any income attributed to a taxing body must fairly reflect the taxpayer's activities in the taxing body's jurisdiction, due process requires that there must be a minimum connection between the taxpayer and the taxing body. 
First Access Material Handling v. Wish
,  297 Ill. App. 3d 396, 404, 697 N.E.2d 1139, 1144 (1998), citing 
Quill Corp. v. North Dakota
, 504 U.S. 298, 306, 119 L. Ed. 2d 91, 102, 112 S. Ct. 1904, 1909-10 (1992).  Plaintiff contends that it lacks the required minimum contacts with Illinois to justify taxation by Illinois.  We disagree.

It has long been established that a state may tax income of a nonresident that is attributable to property or transactions in the forum state. 
International Harvester Co. v. Wisconsin Department of Taxation
, 322 U.S. 435, 441-42, 88 L. Ed. 1373, 1379, 64 S. Ct. 1060, 1064 (1944). In 
International Harvester
, the United States Supreme Court rejected a constitutional challenge to a Wisconsin law taxing corporate dividends out of income derived from corporate property and business activities in Wisconsin, and requiring the corporation to withhold the tax from dividend payments.  International Harvester argued that it was unconstitutional to tax dividends paid to nonresident stockholders who received their dividends outside the state. 
International Harvester,
 322 U.S. at 443, 88 L. Ed. At 1380, 64 S. Ct. at 1064.  The Supreme Court stated, however, that "[p]ersonal presence within the state of the stockholder-

taxpayers is not essential to the constitutional levy of a tax taken out of so much of the corporation's Wisconsin earnings as is distributed to them." 
International Harvester,
 322 U.S. at 441, 88  L. Ed. At 1379, 64 S. Ct. at 1064.  The court concluded that Wisconsin could constitutionally impose the tax, even as to nonresident stockholders, because the state had afforded protection and benefits to International Harvester's activities and transactions within the state, and this had helped give rise to the dividend income of the stockholders. 
International Harvester,
 322 U.S. at 442, 88 L. Ed. At 1379, 64 S. Ct. at 1064.

Plaintiff contends that 
International Harvester
 should not be interpreted so broadly as to stand for the proposition that Illinois may tax plaintiff.  Plaintiff argues that 
International Harvester
 is distinguishable for several reasons, but primarily because of its failure to address the issue of whether the nonresident stockholders had "minimum contacts" with Wisconsin, such that they would be subject to Wisconsin's tax jurisdiction.  Plaintiff contends that, instead, 
International Shoe Co. v. State of Washington,
 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), sets forth the proper standard for which jurisdiction is evaluated.  
International Shoe
 requires that an out-of-state defendant have "minimum contacts" with the forum state if the state is to exercise personal jurisdiction over the defendant, in order to ensure that requiring the defendant to defend in the forum does not offend "'traditional notions of fair play and substantial justice.' [Citation.]"
 International Shoe Co. v. Washington
, 326 U.S. at 316, 90 L. Ed. at 102, 66 S. Ct. at 158 (1945).  We agree with plaintiff that 
International Shoe
 sets forth the appropriate standard.  Applying that standard, we conclude that plaintiff had the required "minimum contacts" with Illinois.

In determining whether a state may assert personal jurisdiction over a nonresident defendant, what the minimum contacts standard means depends on whether a state asserts general or specific jurisdiction over a nonresident defendant.  See, 
e.g
., 
RAR, Inc. v. Turner Diesel, Ltd.
, 107 F.3d 1272 (7th Cir. 1997).   While "general jurisdiction," for personal jurisdiction purposes, applies to suits neither arising out of nor related to a nonresident defendant's contacts with the forum, and is permitted only where the defendant has continuous and systematic general business contacts with the forum, "specific jurisdiction" refers to personal jurisdiction in a suit arising out of or related to a defendant's contacts with the forum. 
RAR, Inc. v. Turner Diesel, Ltd.
, 107 F.3d 1272
;
 
Harding University v. Consulting Services Group, L.P.
, 22 F. Supp. 2d 824 (N.D. Ill. 1998).

This distinction between "general jurisdiction" and "specific jurisdiction," while not articulated by the 
International Shoe
 court, was nonetheless implicitly recognized.  The court, in discussing the contacts required in order for a corporation to be deemed to have "presence" in a state,  noted that presence "has never been doubted when the activities of the corporation there *** give rise to the liabilities sued upon." 
International Shoe Co. v. Washington
, 326 U.S. at 317, 90 L. Ed. at 102, 66 S. Ct. at 158.    The court specifically cited 
International Harvester
 as one of the cases in support of this proposition.  As the court further explained:

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state.  The exercise of that privilege may give rise to obligations, and, so far as those obligations 
arise out of or are connected with
 the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." (Emphasis added.) 
International Shoe Co. v. Washington
, 326 U.S. at 319,  90 L. Ed. at 104,  66 S. Ct. at 160.

Contrary to plaintiff's assertion, defendant's reliance on 
International Harvester
 is not misplaced.

Though not stated by the 
International Harvester
 court,
 the case with which it dealt was an example of "specific jurisdiction."  The present case also involves "specific jurisdiction" as it is an assertion of personal jurisdiction that is clearly related to and arises out of plaintiff's contacts with Illinois.  Under the facts of this case, and in view of the "specific jurisdiction" involved, we find inaccurate plaintiff's description of its connection to Illinois as a "passive investor."  Plaintiff's "passive investment" generated or gave rise to the taxes at issue.  Thus, plaintiff's connection to Illinois is not only its partnership interest in the entity that availed itself of the laws of Illinois, but also plaintiff's receipt of distributable income earned in Illinois, and Illinois' assertion of jurisdiction over plaintiff for the sole purpose of taxing this distributable income arises out of plaintiff's contacts.  Subjecting plaintiff to the replacement tax does not violate the due process clause. 

Plaintiff further argues that taxation by Illinois violates the commerce clause.  The commerce clause of the United States Constitution gives Congress the power " [t]o regulate Commerce * * * among the several States."   U.S. Const., art.  I, § 8, cl. 3.   In certain instances, the commerce clause may serve "as a basis for invalidating state laws that interfere with interstate commerce."  
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 260, 665 N.E.2d 1246 (1996); 
Exhibits, Inc. v. Sweet,
 303 Ill. App. 3d 423, 431, 709 N.E.2d 236, 241 (1998).  The United States Supreme Court has made clear that a state tax will be sustained against a commerce clause challenge if the tax: (1) is applied to an activity with a substantial nexus to the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. 
Complete Auto Transit, Inc. v. Brady
, 430 U.S. 274, 279, 51 L. Ed. 2d 326, 331, 97 S. Ct. 1076, 1079 (1977).  Plaintiff's commerce clause challenge is based solely on the first factor, whether the activities taxed have a substantial nexus to the State of Illinois.

We concur with the following observation: "That this area of law is nebulous at best is beyond dispute."  
Hartley Marine Corp. v. Mierke
, 196 W. Va. 669, 677, 474 S.E.2d 599, 607 (1996).  As the United States Supreme Court has acknowledged
: "[O]ur law in this area is something of a 'quagmire' and the 'application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation.' [Citation.]" 
Quill Corp. v. North Dakota
, 504 U.S. 298, 315-16, 119 L. Ed. 2d 91, 108-09, 112 S. Ct. 1904, 1915 (1992); see also,
 Brown's Furniture, Inc. v. Wagner
, 171 Ill. 2d 410, 433 n.2, 665 N.E.2d 795, 808  n.2 (1996)(noting that the confusion on behalf of the Department of Revenue was perhaps not surprising, considering various descriptions given by the Supreme Court itself of its decisional law in the area limiting state taxation of interstate commerce, such as a "quagmire," an "impoverished territory," and a "tangled underbrush").

Nevertheless, we conclude that subjecting plaintiff to the replacement tax does not violate the commerce clause.  Plaintiff concedes that Illinois has afforded protection and benefits to the Operating Partnership's activities and transactions within the state and that these services provided by Illinois have helped give rise to the income that is distributed to plaintiff, and plaintiff further concedes that the 
activities
 of the Operating Partnership do have a substantial nexus to Illinois.  Plaintiff contends, however,  that despite the substantial nexus between the Operating Partnership's activities and Illinois, there must also exist a substantial nexus between Illinois and the entity it desires to tax.  Plaintiff argues that it has no physical presence in Illinois and therefore there is no substantial nexus between plaintiff and Illinois.  Plaintiff has cited the United States Supreme court case of 
Quill
 in support of its argument that, because plaintiff was not physically present in the State of Illinois, taxation of the income it earned is prohibited.

 In 
Quill
, the court first concluded that due process considerations did not bar a state from requiring an out-of-state mail order company to collect a use tax from its in-state customers.  The court then undertook a separate commerce clause analysis.  In so doing, the court declared as valid,  in the area of sales and use taxes, a "bright-line" rule that physical presence in the taxing state was required in order for a mail order company to have the "substantial nexus" with the state that is required by the commerce clause.  Thus, the court reaffirmed the rule forbidding the imposition of use tax collection duties upon an out-of-state vendor whose only contacts with a taxing state are via the mail or common carrier.

Plaintiff argues that in 
Quill
, the Supreme Court "left open" the question of whether a physical presence is required in order to satisfy the substantial nexus requirement in other tax cases.   We disagree.  As the 
Quill
 court noted, "concerning other types of taxes we have not adopted a similar bright-line, physical presence requirement." 
Quill,
 504 U.S. at 317, 119 L. Ed. 2d at 110,  112 S. Ct. at 1916.   Thus, the physical presence requirement of 
Quill
 is inapplicable to the instant case.  Other jurisdictions have also declined to extend 
Quill
 to cases not involving sales and use taxes.  See, 
e.g
., 
Couchot v. State Lottery Comm'n
, 74 Ohio St. 3d 417, 425, 659 N.E.2d 1225, 1230 (1996) ("There is no indication in 
Quill
 that the Supreme Court will extend the physical-presence requirement to cases involving taxation measured by income derived from the state").  We conclude that the requirement of a physical presence does not apply to the present case and, even if it did, plaintiff has a physical presence in the form of the Operating Partnership.

The 
Quill
 court merely carved out a narrow exception in the area of use tax collection duties.  Moreover, the court's decision was based upon considerations that have no bearing upon the facts of this case.  Most notably: 

"The Court noted that the *** rule [forbidding the imposition of use tax collection duties upon an out-of-state vendor whose only contacts with a taxing state are via the mail or common carrier] should be retained because significant commercial benefits flowed from delineating a 'discrete realm of commercial activity that is free from interstate taxation.' [Citation.]   In addition, the Court observed that the *** rule had 'engendered substantial reliance' and 'become part of the basic framework of a sizable industry' and, therefore, principles of 
stare decisis
 counseled in favor of its retention." 
Brown's Furniture, Inc. v. Wagner,
 171 Ill. 2d 410, 422-23, 665 N.E.2d 795, 802 (1996), quoting 
Quill
, 504 U.S. at 317, 119 L. Ed. 2d at 110, 112 S. Ct. at 1916.

Clearly, the facts and circumstances of 
Quill
 are distinguishable from the present case.

Plaintiff is not a mail order company with no other contacts in Illinois, but, rather, a partner 
of the Operating Partnership located within Illinois.  The tax obligations of partners are clear.  Section 305 of the Illinois Income Tax Act governs the allocation of partnership income by partnerships and partners other than residents. 35 ILCS 5/305 (West 1996).  A partnership is a conduit only, and each partner, in determining its income tax, takes into account its distributive share of the partnership's income.  As the Illinois Supreme Court has explained: "A partnership is not a taxpayer.  A partnership serves as an entity for the purpose of calculating and filing informational returns and as a conduit through which the taxpaying obligation passes to the individual partners." 
Acker v. Department of Revenue
, 116 Ill. App. 3d 1080, 1083, 452 N.E.2d 798, 801 (1983).  As the 
Acker
 court further noted, the United States Supreme Court has held:

"The partnership is regarded as an independently recognizable entity apart from the aggregate of its partners.  Once its income is ascertained and reported, its existence may be disregarded  
since each partner must pay a tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed
." 
(Emphasis added.)
 Acker,
 116 Ill. App. 3d at 1083-84, 
452 N.E.2d at 801, quoting 
United States v. Basye
  410 U.S. 441, 448, 35 L. Ed. 2d 412, 419, 93 S. Ct. 1080, 1085 (1973).

Although the issue in 
Acker
 was different from that here, in view of its description of the nature of a partnership which elucidates the partner's interest in the partnership, we find inaccurate plaintiff's characterization of its only link to Illinois, for taxation purposes, as a "passive" ownership interest.  Certainly, the physical presence in the taxing state of the partnership that generates the income suffices as a physical presence of the nonresident partner in the state.  As plaintiff has noted, the subtraction modification provided by section 203(d)(2)(I)(35 ILCS 5/203(d)(2)(I)(West 1996)) requires that a partnership subtract from its income the amount of income distributable to partners subject to the replacement tax, such as plaintiff.  When all the partners of a partnership are subject to the replacement tax, as here, incidence of the replacement tax is shifted entirely from the partnership to the partners.  Thus, under these circumstances, the partnership's replacement tax liability will always be zero.  We believe that, despite the fact that this income has become distributable to the partners, it remains subject to taxation under the 
Complete Auto
 test.

Plaintiff's characterizations of itself as a separate entity to whom the "substantial nexus" between the partnership's activities and Illinois did not apply, for taxation purposes, is meritless.  Plaintiff has failed to cite any case that has applied the 
Complete Auto
 test to bar a state from taxing the distributable income of a nonresident limited partner of a partnership that is physically present in Illinois, operates in Illinois, and whose activities undisputedly have a substantial nexus to the taxing state.  We decline to extend 
Quill
 to the state tax imposed on partnership income. We hold that the tax here is valid under the commerce clause.

Having determined that plaintiff was subject to replacement tax liability, we now turn to the issue of whether the Department correctly decided that plaintiff was not entitled to the investment credit.
  Our standard of review is 
de novo
, because the question involved is one of law - the construction of a statute -  and while the Department's determination is entitled to deference, it is not binding on the court. 
Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board
, 277 Ill. App. 3d 440, 444-45, 660 N.E.2d 151, 154 (1995).

As in effect during the tax years in issue, section 201(e) did not explicitly provide whether pass through of the investment credit from partnerships to partners was allowed or disallowed, nor did the statute expressly prohibit pass through.   The statute was silent.  In 1997, the statute was amended to explicitly allow the credit to pass through to a partner.  Thus, the threshold issue is whether the amendment applies to the instant case.

The parties pose the question somewhat differently.  Each apparently presumes that the original statute applies, but they focus on the amendment to support their divergent positions regarding whether the legislature intended that the investment credit pass through from partnerships to partners in the original statute.  Plaintiff asserts that the original statute was ambiguous, and the subsequent amendment by the legislature to expressly provide for pass through of the investment credit was merely a "clarification of existing law."  The Department argues that the prior version of the statute was unambiguous, that the subsequent amendment changed rather than clarified the law, and that plaintiff is thus subject to the prior version of the law, which did not allow for pass through of the investment credit.

In 1996, the Illinois Supreme Court considered the very issue with which we are presented - how a court decides whether a statutory amendment applies to an existing controversy on appeal.  
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282, 664 N.E.2d 36, 39 (1996).  Noting that the applicable principles have not been consistently stated, the court observed two different lines of cases, one using the "legislative intent" approach and the other using the "vested rights approach."

The parties here have used the "legislative intent" approach in their analyses.    Under this approach, it is presumed that the legislature intends to effect a change in the law when it enacts a statutory amendment.  See,
 e.g.
, 
People v. Hare
, 119 Ill. 2d 441, 451, 519 N.E.2d 879 (1988).  Such substantive changes are presumed to be applied prospectively only.   Exceptions exist to the presumption favoring prospective application of an amendatory act and amendments will be construed as retroactive where the amendment changes procedure alone or where an amendment merely clarifies existing law.  See, 
e.g.
,  
Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc., 
240 Ill. App. 3d 360, 364-65, 608 N.E.2d 178, 181 (1992) .   Utilizing the "legislative intent" approach here, the parties put forth various arguments in support of their appositional stances as to whether the amendment here clarified or changed the law.  As the 
First of America Trust
 court acknowledged, under the analysis required by the "legislative intent" approach, courts struggled with the determination of whether an amendment was procedural or substantive. 
First of America Trust
, 171 Ill. 2d at 288, 664 N.E.2d at 39.  Similarly, were we to utilize the "legislative intent" approach here, we  would potentially struggle with the determination of whether the amendment at issue here was a clarification or a substantive change.

The 
First of America Trust
 court concluded that the better approach is the "vested rights" approach, in which a court does not engage in the examination of legislative intent, but instead applies the general rule that a court should apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right. 
First of America Trust
, 171 Ill. 2d at 289, 664 N.E.2d at 39; accord 
Dardeen v. Heartland Manor,  Inc
., 186 Ill. 2d 291, 295 (1999); 
Martin v. Department of Professional Regulation,
 284 Ill. App. 3d 591, 596, 672 N.E.2d 267, 271 (1996); 
County of Hamilton v. Department of Revenue,
 279 Ill. App. 3d 639, 645, 665 N.E.2d 567, 571-72 (1996). 
 
 This decision was in conformance with several earlier decisions which held that, where the legislature changes the law while an appeal is pending, the case must be disposed of by the reviewing court under the law as it then exists, not as it was when the judgment was entered in the lower court. See, 
e.g.
,
 Envirite Corp. v. Illinois Environmental Protection Agency,
 158 Ill. 2d 210, 215, 632 N.E.2d 1035 (1994);  
Bates v. Board of Education
,
 Allendale Community Consolidated School District No. 17
, 136 Ill. 2d 260, 268-69, 555 N.E.2d 1 (1990).  As the 
First of America Trust
 court explained, legislative intent is immaterial because the legislature has no power to retroactively affect vested rights even if it so desired. 
First of America Trust
, 171 Ill. 2d at 288-90,  664 N.E.2d 36.  Thus, we shall analyze the present case under the vested rights approach, which dispenses with the need to divine legislative intent with respect to prospective versus retroactive application.

The amendment here did not affect any vested right.  Although not capable of precise definition, the Illinois Supreme Court has defined a vested right as "an expectation that is so far perfected that it cannot be taken away by legislation" and one which is "a complete and unconditional demand or exemption that may be equated with a property interest." 
First of America Trust
, 171 Ill. 2d at 290-91, 664 N.E.2d 36. 
 Here,
 
the amended statute was in effect at the time of appeal and also before the trial court rendered its decision below.  No party has a vested right in the continuance of a law, and the legislature has an abiding right to amend a statute. 
Dardeen v. Heartland Manor, Inc.
, 186 Ill. 2d 291, 300, 710 N.E.2d 827, 832 (1999)
; First of America Trust
, 171 Ill. 2d at 291, 664 N.E.2d at 40
; see also, 
Bailey & Associates, Inc. v. Department of Employment Security
, 289 Ill. App. 3d 310, 322, 683 N.E.2d 1204, 1212 (1997) (explaining that Illinois Department of Employment Security had no vested right to treat plaintiff's salespeople as employees for unemployment insurance purposes but, instead, the Department was to apply the law as passed by the legislature, which had spoken with sufficient clarity when it amended a statute to unambiguously provide that salespersons were independent contractors).   We note further that the amendment here did not specifically provide for prospective application only.  This court has previously noted that, where the legislature does not specify prospective application,  the State implicitly gives up any "vested rights." See, 
e.g
.,  
Richard's Tire Co. v. Zehnder
  295 Ill. App. 3d 48, 55-56, 692 N.E.2d 360,
 366 (1998).  In sum, there are no vested rights that would be violated if the amended statute were applied.  Pursuant to the vested rights approach, the amendment applies here, and plaintiff may use the investment credit allocated to it from the Operating Partnership against its replacement tax liability.

Our decision comports with the rule of statutory construction that a court, in construing a statute, presumes that the legislature did not intend absurd, inconvenient or unjust results. 
Sun Choi v. Industrial Comm'n,
 182 Ill. 2d 387, 396, 695 N.E.2d 862, 867 (1998).  Under the present situation, in view of the subtraction modification required by section 203(d)(2)(I), the Operating Partnership will never incur a replacement tax liability, and can never utilize the investment credit generated by the investment in qualified property.  If, in spite of the shift of the Operating Partnership's replacement taxation to the plaintiff, the plaintiff is not allowed to utilize the investment credit, that leaves the credit unusable by any taxpayer.  We believe such a result to be unreasonable and, therefore, not one intended by the legislature.

We conclude that subjecting plaintiff to replacement tax liability violates neither the due process clause nor the commerce clause; however, we reverse the Department's decision disallowing the investment tax credit, thus allowing plaintiff to take the tax credit for the years in issue.

Reversed.

O'MARA FROSSARD, P.J. and RAKOWSKI, J., concur.