968 So.2d 18 (2006)
Joe E. LANZI III
v.
ALABAMA DEPARTMENT OF REVENUE.
2040298.
Court of Civil Appeals of Alabama.
June 30, 2006.
Certiorari Denied April 13, 2007.
*19 David M. Wooldridge, Anthony R. Smith, and Donald E. Johnson of Sirote & Permutt, P.C., Birmingham, for appellant.
Troy King, atty. gen.; and Henry C. Chappell, chief counsel, Department of Revenue, and deputy atty. gen.; and David E. Avery III and Glenmore Powers II, asst. counsel and asst. attys. gen., Department of Revenue, for appellee.
Bruce P. Ely and Matthew S. Houser of Bradley Arant Rose & White, LLP, Birmingham, for amicus curiae Alabama Society *20 of Certified Public Accountants, in support of the appellant.
Alabama Supreme Court 1051475.
PER CURIAM.
The facts underlying this appeal are as follows. Joe E. Lanzi III ("the taxpayer") is a resident of Georgia and a limited partner of the Quad-L Limited Partnership ("Quad-L" or "the partnership"), an Alabama limited partnership. Quad-L was formed in 1996, at which time the taxpayer made an initial contribution to Quad-L in exchange for his partnership interest; the taxpayer holds a five-eighths ownership interest in the partnership. Quad-L's other owners are the taxpayer's parents and sister, each of whom lives in Alabama; among the partnership's stated purposes are to "make a profit" and to manage and preserve "family assets." Quad-L buys and sells stocks, bonds, and other securities, and it receives both dividend and interest income from the securities that it owns and gains from the sale of those securities. The taxpayer's parents, who are Quad-L's general partners and who reside in Birmingham, monitor and manage Quad-L's investments with the help of financial consultants located in Montgomery. Quad-L's assets are held primarily through an account with Charles Schwab & Co., which is headquartered in California and has offices throughout the United States (including in Alabama); Quad-L also owns a bond portfolio through a broker located in Boston, Massachusetts. Transactions involving Quad-L's Schwab account are initiated either by the general partners or by Quad-L's financial consultants in Montgomery through the use of Schwab's toll-free telephone line.
The taxpayer, as a limited partner, does not participate in the management of Quad-L's assets; he is a mere passive investor in Quad-L. Further, it is undisputed that, apart from his interest in Quad-L, the taxpayer, during the tax years in question, owned no property, conducted no business, and had no economic ties to Alabama other than his limited-partnership interest in Quad-L.
During 1998 and 2000, the taxpayer received distributions from Quad-L that he reported as income on his Georgia income-tax return; however, he did not file an Alabama income-tax return reporting those amounts to the Alabama Department of Revenue ("the Department") as taxable income. After an audit, the Department determined that the taxpayer owed Alabama income tax in the amount of $8,482 for the year 1998 and in the amount of $10,541 for the year 2000, and it entered a final assessment against the taxpayer in those amounts, plus interest and penalties. The taxpayer, pursuant to § 40-2A-7(b)(5)a., Ala.Code 1975, sought administrative review of the final assessment by appealing to the Department's Administrative Law Division, and the cause was heard by an administrative law judge ("the ALJ"). The ALJ ruled in favor of the taxpayer, concluding in his order that Alabama's imposition of an income tax on the taxpayer did not conform with the Due Process Clause and the Commerce Clause of the United States Constitution. The Department, pursuant to § 40-2A-9(g), appealed to the Montgomery Circuit Court from the ALJ's order. That court, reviewing the ALJ's order on a de novo basis (but on the record made at the hearing before the ALJ), entered a judgment in favor of the Department, concluding that the imposition of Alabama income tax on the taxpayer was constitutional. However, that court's judgment reduced the amount of the assessment for each year to $6,143 and $8,348, respectively, in accordance with an agreement of the parties and waived the imposition of penalties. The *21 taxpayer's postjudgment motion was denied, and he appealed to this court.
At the outset, we note that the judgment under review is subject to no presumption of correctness.
"The circuit court reviews de novo an order of an administrative law judge in the State Department of Revenue; however, the order is presumed prima facie correct and the burden is on the appealing party to show otherwise.
"[An appellate court's] standard of review is different from that applied by the circuit court in reviewing an administrative law judge's order. When reviewing a case in which the trial court sat without a jury and heard evidence in the form of stipulations, briefs, and the writings of the parties, [an appellate court] sits in judgment of the evidence; there is no presumption of correctness. When [an appellate court] must determine if the trial court misapplied the law to the undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court. In this case the [circuit] court based its decision upon the stipulations, briefs, writings, and arguments of the parties' attorneys. No testimony was presented. Therefore, we must sit in judgment of the evidence, and the [circuit] court's ruling carries no presumption of correctness."
Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 516-17 (Ala. 2003) (citations omitted).
The taxpayer, in the administrative-review proceedings and in the circuit court, asserted that the assessment of income taxes against him with respect to the Quad-L distributions was invalid on three distinct grounds: (1) that is was inconsistent with the Due Process Clause and the Commerce Clause; (2) that is was inconsistent with the pertinent taxing statutes; and (3) that it was invalid because, the taxpayer alleged, it constituted an adoption by the Department of a new administrative "rule" without compliance with the notice provisions of the Alabama Administrative Procedure Act, Ala.Code 1975, § 41-22-1 et seq. ("the AAPA"). Only the first two issues are presented by the taxpayer on appeal.[1]
Ala.Code 1975, § 40-18-1 et seq., governs the subject of income taxation. Under § 40-18-2(6), "[e]very nonresident individual receiving income from property owned or business transacted in Alabama" is subject to an annual tax on that individual's "taxable income," a term that means "gross income" minus any deductions allowed to individuals (see § 40-18-15.1). "Gross income," in turn, is generally defined to include "gains, profits and income derived from . . . dealings in property whether real or personal, growing out of ownership or use of or interest in such property" and "from interest, royalties, rents, dividends, securities, or transactions of any business carried on for gain or profit and the income derived from any source whatever" (§ 40-18-14(1)), although "gross income" in the case of nonresident individuals is limited to "income *22 from property owned or business transacted in Alabama" (§ 40-18-14(4)).
Generally stated, for a state to lawfully impose a tax, both the Commerce Clause and the Due Process Clause of the United States Constitution (U.S. Const. art. I, § 8, cl. 3; id. amend. XIV, § 1) must be satisfied. As the United States Supreme Court noted in Quill Corp. v. North Dakota, 504 U.S. 298, 312, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), although the Due Process Clause "concerns the fundamental fairness of governmental activity" and mandates inquiry into "whether an individual's connections with a State are substantial enough to legitimate the State's exercise of power over him," Commerce Clause analysis is "informed . . . by structural concerns about the effects of state regulation on the national economy."
We first consider the propriety of the Department's assessment with respect to the Due Process Clause. Under that clause, in order for a state to exercise jurisdiction over a nonresident taxpayer, that taxpayer must have sufficient "minimum contacts" with the taxing state. Quill Corp. v. North Dakota, supra. Although the physical presence of the taxpayer in the taxing state is not required under the Due Process Clause (504 U.S. at 306, 112 S.Ct. 1904), our Supreme Court has held that as a general rule the income that a taxpayer receives from intangible personal property is taxable in the taxpayer's state of residence. Anniston Sportswear Corp. v. State, 275 Ala. 46, 151 So.2d 778 (1963). Two exceptions have been recognized to this general rule: (1) when the taxpayer establishes a "commercial domicile" in another state, and (2) when the intangible personal property acquires a "business situs" in another state. 275 Ala. at 50-51, 151 So.2d at 782.
Neither of the two exceptions to the general rule recognized in Anniston Sportswear apply to the facts of this case. First, the taxpayer has not established a commercial domicile in Alabama because he has no other contacts, commercial or otherwise, with Alabama other than his limited-partnership interest in Quad-L. Further, the taxpayer's limited-partnership interest has not acquired a "business situs" in Alabama. See id. (intangibles for tax purposes may acquire a situs of their own in a state other than the legal domicile of the owner when they are used as an integral part of the owner's business conducted in such other state); see also Ala. Admin. Code (Dept. of Revenue), r. XXX-XX-X-X-XX(c) (defining "business situs" as the place where the intangible personal property is employed as capital or the place where the property is located if possession and control of the property is localized in connection with a trade or business so that substantial use or value attaches to the property).
A nonresident's ownership of stock in a domestic corporation, without more, does not subject the nonresident shareholder to a state's judicial jurisdiction. See Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (violation of the Due Process Clause). A nonresident's interest in a limited partnership is directly analogous to a nonresident's ownership of stock in a corporation; thus, by analogy, a nonresident's limited-partnership interest in a limited partnership domiciled within a state, without more, should not subject the nonresident limited partner to the state's taxing jurisdiction.
We note that the dissenting opinion cites a number of cases from the courts of other states for the proposition that the physical presence and activities of Quad-L should be attributed to an out-of-state limited partner for jurisdictional purposes. In our *23 opinion, however, a better line of reasoning is reflected in certain federal court decisions standing for the proposition that the mere ownership of a limited-partnership interest does not provide sufficient minimum contacts with the forum state for purposes of judicial jurisdiction. In Marriott PLP Corp. v. Tuschman, 904 F.Supp. 461 (D.Md.1995), the federal district court stated:
"Tuschman's status as a limited partner in CHLP, even though the latter's principal place of business is in Maryland, does not in and of itself confer personal jurisdiction over Tuschman in this Court. Shareholders in a corporation do not subject themselves to personal jurisdiction in the forum in which the corporation was formed. Shaffer v. Heitner, 433 U.S. 186, 216, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977). Similarly, forums in which a corporation does business do not automatically have personal jurisdiction over the corporation's shareholders. . . .
"The same rationale applies to limited partners who, like shareholders, are passive investors with limited liability. See Regency Hous. & Drilling Ltd. Partnership I v. Cohen, [C.A. No. 89C-DE-70] (Del.Super.Ct. Sept. 11, 1991) [(not reported in A.2d)] (`Inasmuch as a limited partnership represents a security investment analogous to the purchase of stock in a corporation, plaintiff's contention [that defendant's status as a limited partner satisfies the minimum contacts test] is prohibited by [Shaffer v. Heitner].'); see also Generale Bank, New York Branch v. Choudury, 776 F.Supp. 123 (S.D.N.Y.1991), rev'd on other grounds, 779 F.Supp. 303 (S.D.N.Y.1991) (granting nonresident limited partner's motion to dismiss for lack of personal jurisdiction); Sender v. Powell, 902 P.2d 947 (Colo.App.1995) (holding that defendant merely held a passive interest in the partnership and that such contact was too insubstantial to provide the requisite contacts with Colorado to allow the constitutional exercise of long-arm jurisdiction over him); Renda v. Peoples Fed. Sav. & Loan Ass'n, 538 So.2d 860, 863 (Fla.Dist.Ct.App.1988) (holding that nonresident limited partners did not have the necessary minimum contacts to sustain personal jurisdiction in Florida although partnership's purpose was to develop property in Florida)."
904 F.Supp. at 466; see also Construction Aggregates, Inc. v. Senior Commodity Co., 860 F.Supp. 1176, 1180 (E.D.Tex.1994) (it "strains reason to infer that anyone buying a limited partnership interest as a passive investment in a Texas limited partnership impliedly consents to or expects to be haled into court on any and all suits brought in Texas"). To like effect are Renda, supra, and Klein v. Mega Trading, Ltd., 416 So.2d 866 (Fla.Dist.Ct.App.1982).
Upon careful consideration of the issues presented in this case, we cannot conclude that, under the specific facts of this case, Alabama had jurisdiction to impose income tax on the taxpayer, whose only connection with Alabama was his limited-partnership interest in Quad-L. On the basis of the foregoing analysis and authorities, the circuit court's judgment is reversed, and the cause is remanded for that court to enter a judgment in favor of the taxpayer.[2]
REVERSED AND REMANDED.
*24 THOMPSON and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
PITTMAN, J., dissents, with writing, which CRAWLEY, P.J., joins.
PITTMAN, Judge, dissenting.
I disagree with the per curiam opinion's conclusion that the circuit court's judgment is due to be reversed on the basis that the imposition of Alabama income tax on the taxpayer in this case violates the Due Process Clause.[3]
As the Alabama Supreme Court noted in Elliott v. Van Kleef, 830 So.2d 726, 730 (Ala.2002), in the context of a state's exercise of judicial power over an individual, "`[t]wo types of contacts can form a basis for personal jurisdiction'" under modern[4] federal constitutional jurisprudence: "general contacts" and "specific contacts." "Specific contacts," in the judicial context, are "`the defendant's contacts with the forum state that are related to the cause of action'" that "`must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state'" in order for the Due Process Clause to be satisfied. Id. (quoting Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala. 1998) (Lyons, J., concurring in the result)).
Since International Harvester Co. v. Wisconsin Department of Taxation, 322 U.S. 435, 442, 64 S.Ct. 1060, 88 L.Ed. 1373 (1944), a case decided one year before International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and which is cited as authority in International Shoe itself, it has been settled that a state may, consistent with the Due Process Clause, tax income of nonresidents that "is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers." Accord Moorman Mfg. Co. v. Bair, 437 U.S. 267, 273, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978) (due process is satisfied when some "minimal connection" between the taxpayer and the state exists and the income the state seeks to tax is "rationally related `to values connected with'" the state). In subjecting such income to taxation, a state may properly be said to be exercising "specific jurisdiction." Indeed, an Illinois appellate court has gone so far as to conclude that International Harvester, which upheld application of Wisconsin's income-tax statutes to dividends paid to nonresidents out of income derived from property and business activities in Wisconsin, amounted to "an example of `specific jurisdiction,'" i.e., jurisdiction to tax based upon specific contacts with the pertinent state. Borden Chems. & Plastics, L.P. v. Zehnder, 312 Ill.App.3d 35, 42, 726 N.E.2d 73, 79, 244 Ill.Dec. 477, 483 (2000).
In Zehnder, a limited partnership that was based in Delaware was itself a limited *25 partner, and owned a 98.99 percent interest, in a second limited partnership that operated in Illinois and earned income in 1988 and 1989 from distributions from the Illinois limited partnership. The Delaware limited partnership sought to avoid taxation upon that income by Illinois on constitutional grounds, asserting that the Due Process Clause and the Commerce Clause "prohibit[ed] Illinois in the first instance from assessing any replacement[[5]] tax on a limited partner . . ., which has no connection with the State of Illinois other than investing in a partnership." 312 Ill.App.3d at 39, 726 N.E.2d at 77, 244 Ill.Dec. at 481. In rejecting the Delaware partnership's Due Process Clause challenge, the Zehnder court held that the taxing authority's assertion of jurisdiction to tax the Delaware partnership was "clearly related to and ar[ose] out of [the Delaware partnership's] contacts with Illinois." 312 Ill. App.3d at 42, 244 Ill.Dec. 477, 726 N.E.2d at 79. That court concluded:
"Under the facts of this case, and in view of the `specific jurisdiction' involved, we find inaccurate [the] description of [the Delaware partnership's] connection to Illinois as a `passive investor.' [The Delaware partnership's] `passive investment' generated or gave rise to the taxes at issue. Thus, [the Delaware partnership's] connection to Illinois is not only its partnership interest in the entity that availed itself of the laws of Illinois, but also [the Delaware partnership's] receipt of distributable income earned in Illinois, and Illinois' assertion of jurisdiction over [the Delaware partnership] for the sole purpose of taxing this distributable income arises out of [those] contacts. Subjecting [the Delaware partnership] to the replacement tax does not violate the due process clause."
Id.
To like effect is Weil v. Chu, 120 A.D.2d 781, 501 N.Y.S.2d 515 (1986), aff'd, 70 N.Y.2d 783, 521 N.Y.S.2d 223, 515 N.E.2d 908 (1987). In Weil, a New York appellate court considered a due-process challenge to the taxation of income generated by a law partnership's operations in New York but distributed to partners practicing law in the District of Columbia. The appellate court soundly rejected that challenge, reasoning that there was a "sufficient nexus" between the District of Columbia partners' income and New York "to validate the tax in question" in that the law partnership "maintain[ed] a considerable permanent practice in New York" even though the District of Columbia partners did not themselves practice there. 120 A.D.2d at 784, 501 N.Y.S.2d at 518.
I would also note that certain appellate opinions have, as against due-process challenges, upheld the imposition of state income taxes on nonresident shareholders of corporations organized under the auspices of Subchapter S of the United States Internal Revenue Code (26 U.S.C. § 1361 et seq.) when such shareholders receive income distributions from such "S corporations" operating in the taxing state. Two such opinions cited by the Department are Agley v. Tracy, 87 Ohio St.3d 265, 266-67, 719 N.E.2d 951, 953 (1999), and Kulick v. Department of Revenue, 290 Or. 507, 517-18, 624 P.2d 93, 98-99, appeal dismissed, 454 U.S. 803, 102 S.Ct. 76, 70 L.Ed.2d 73 (1981). Given that an S corporation, like a limited partnership, "is simply a conduit of *26 income to shareholders" (Wolff v. Director of Revenue, 791 S.W.2d 390, 393 (Mo. 1990)), I deem these additional opinions persuasive.
The taxpayer relies heavily upon the due-process analysis employed in Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), in support of his contention that Alabama cannot tax Quad-L's distributions to him. Although Shaffer applied the minimum-contacts formula of International Shoe to the issue of quasi-in-rem judicial jurisdiction based upon the presence of a defendant's property in the pertinent state, that opinion is not inconsistent with the authorities I have cited. In Shaffer, the United States Supreme Court stated:
"[W]hen claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interests in assuring the marketability of the property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction, as would the likelihood that important records and witnesses will be found in the State. The presence of property may also favor jurisdiction in cases, such as suits for injury suffered on the land of an absentee owner, where the defendant's ownership of the property is conceded but the cause of action is otherwise related to rights and duties growing out of that ownership."
433 U.S. at 207-08, 97 S.Ct. 2569 (emphasis added; footnotes omitted).
A leading taxation treatise notes that the foregoing analysis lends support to the analogous proposition that a state should have the authority to collect taxes from a nonresident shareholder on income derived from a corporation doing business in the particular state:
"The shareholder's rights in a corporation conducting business in a state `would normally indicate that he expected to benefit from the State's protection of his interest.' Moreover, the factors that the Court cited in support of the constitutionality of the tax in International Harvester are factors that would likewise support the state's `specific jurisdiction' to adjudicate a dispute over the nonresident shareholder's tax liability."
Jerome R. Hellerstein & Walter Hellerstein, State Taxation ¶ 6.04[1][a] (3d ed.2001 and Supp.2005) (footnote omitted). Likewise, a nonresident limited partner in a partnership that conducts business solely in Alabama would reasonably expect to benefit from Alabama's protection of his partnership interest in litigation arising from disputes concerning the partnership that might reach the judicial system, and such a partner would similarly receive benefits from Alabama statutes and caselaw governing the operations of, and investments made by, the partnership. Given these specific contacts, as the circuit court aptly noted in its judgment, I believe that Alabama may constitutionally seek some recompense from the taxpayer under the circumstances presented:
"Here, Alabama seeks to tax value earned within its borders to which [the taxpayer] has purposefully acquired rights to. A person purposefully earning substantial Alabama source income through an Alabama entity knowingly assumes the risk that the State of Alabama will exercise some jurisdiction or *27 power over that Alabama income. The cause of action here involved is the taxation of income earned within Alabama. Alabama has jurisdiction over this income and this income is directly related to [the taxpayer's] purposeful connection within this state. The cause of action taxation of income earned within Alabamais thus sufficiently related to the earning of the income from an Alabama source to meet the due process requirements of the United States Constitution."
Therefore, I respectfully dissent.[6]
CRAWLEY, P.J., concurs.
NOTES
[1] The Alabama Society of Certified Public Accountants, appearing as an amicus curiae in support of the taxpayer, has attempted to separately raise the AAPA issue. However, because the taxpayer, who is the appellant in this court, has waived that issue by declining to argue it in his brief, we treat that issue as not before the court. See Anderson v. Smith, 274 Ala. 302, 304, 148 So.2d 243, 245 (1962) (because "[a]n amicus curiae is limited to the issues made by the parties to a suit," an issue waived by aggrieved party "cannot be injected" by amicus into appellate proceedings); see also Courtaulds Fibers, Inc. v. Long, 779 So.2d 198, 202 n. 1 (Ala.2000).
[2] Because our conclusion that Alabama income tax cannot be imposed on the taxpayer consistent with the Due Process Clause is dispositive of the appeal, we need not reach the taxpayer's other arguments. We note that our holding is limited to the application of the tax statutes in effect during the specific tax years at issue, i.e., 1998 and 2000. Effective for tax years beginning in 2001 a nonresident partner may consent to personal jurisdiction in Alabama for the purposes of paying taxes on Alabama-source income or the partnership may pay the tax on behalf of the nonresident partners, see § 40-18-24.1(c), Ala.Code 1975; however, the applicability of that statutory provision is not before the court.
[3] Having reached this question, the per curiam opinion implicitly indicates that the taxpayer's appeal can properly be resolved only on constitutional grounds. See Lowe v. Fulford, 442 So.2d 29, 33 (Ala.1983) (a court has a duty to avoid constitutional questions unless essential to the proper disposition of the case).
[4] By "modern" I mean since the United States Supreme Court decided International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which first enunciated the "minimum contacts" standard of "fair play and substantial justice" in the due-process arena.
[5] The Illinois "replacement tax" considered in Zehnder was "imposed on the privilege of earning or receiving income as a resident of Illinois or from Illinois sources" and was so named because it "was adopted to `replace' the revenues lost as a result of the abolition of the [Illinois] personal property tax." 312 Ill. App.3d at 37-38, 726 N.E.2d at 76, 244 Ill. Dec. at 480.
[6] Because the main opinion properly concludes that it need not reach the constitutionality, under the Commerce Clause, of Alabama's imposition of income taxation upon Quad-L's distributions to the taxpayer in this case, I likewise do not address that issue.