First Division
September 11, 2006

No. 1-05-3457

GARY AND SHARON ROSIER, Individually )
and as Parents and Next Friends of )
Steven Rosier, a Disabled Minor, ) Appeal from
) the Circuit Court
    Plaintiffs-Appellees, ) of Cook County
)
        v. ) 03 L 14414
)
CASCADE MOUNTAIN, INC., and THE WALZ ) Honorable
FAMILY CORPORATION, ) Michael J. Hogan,
) Judge Presiding
    Defendants-Appellants. )

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Wisconsin defendants Cascade Mountain, Inc., and The Walz Family Corporation bring this appeal under Supreme Court Rule 306(a)(3) from an order of the circuit court of Cook County denying their motion to dismiss plaintiffs' tort claim for lack of personal jurisdiction. 166 Ill. 2d R. 306(a)(3). The main issue we address is whether the Wisconsin defendants have been doing business in Illinois and are therefore subject to general personal jurisdiction in Illinois pursuant to section 2-209(b)(4) of the Code of Civil Procedure. 735 ILCS 5/2-209(b)(4) (West 2002).

Illinois residents Gary and Sharon Rosier, individually and as next friends of their minor son Steven, filed this negligence action in Illinois after Steven was injured on March 3, 2003, while attempting to snowboard over the "J.J." tabletop jump at the defendants' Cascade Mountain ski and snowboard facility in

1-05-3457

Portage, Wisconsin.  The plaintiffs sought a minimum of $50,000 in compensatory damages based on allegations that the Wisconsin corporations negligently designed, constructed, maintained, monitored, or supervised the tabletop jump and/or negligently failed to timely respond to Steven's injuries.

The plaintiffs served the defendants in Wisconsin.

In conjunction with their motion to quash service of summons and dismiss the case, the Wisconsin corporations filed the affidavit of their president and director, Phil Walz.  The affidavit indicated the corporations did not own any real estate or other assets in Illinois, maintain any personnel, offices or business equipment in Illinois, or file tax returns in Illinois.  The affidavit further specified the corporations contracted with an Illinois telecommunications provider for an Illinois telephone number through which callers could listen to a prerecorded Wisconsin snow report, and that the corporations had secured a loan and a line of credit with an Illinois bank to fund chairlift and snow making improvements at Cascade Mountain.  The Wisconsin entities argued these contacts were insufficient to subject them to specific *in personam* jurisdiction in Illinois pursuant to the long-arm statute, which is set out in section 2-209(a) of the Code of Civil Procedure, or to general *in personam* jurisdiction in Illinois under the doing business doctrine, which is codified in section 2-209(b)(4) of the Code of Civil Procedure.  735 ILCS 5/2-209(a), (b)(4) (West 2002) (Code).

2

1-05-3457

The Rosiers did not file any affidavits rebutting Phil Walz's sworn statement[1] or otherwise respond directly to the Wisconsin defendants' contentions about sections 2-209(a) and (b)(4) of the Code. Instead, the Rosiers argued Cascade Mountain's local telephone number, local marketing, and interactive website evidenced sufficient contacts with Illinois to justify its courts' assertion of general jurisdiction over both Wisconsin defendants under the catchall provision of the Illinois' long arm statute. The catchall provision provides: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2002).

When the circuit court decides a jurisdictional question solely on the basis of documentary evidence as it did in this

---

[1] Since the Rosiers did not file any affidavits rebutting Phil Walz's affidavit, the well-alleged facts in his affidavit must be taken as true. *Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.*, 336 Ill. App. 3d 572, 579, 784 N.E.2d 834, 839 (2002).

3

1-05-3457

case, the question is addressed *de novo* on appeal *Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 559-60, 786 N.E.2d 613, 616 (2003). The plaintiff bears the burden of establishing a *prima facie* basis upon which jurisdiction over an out-of-state resident may be exercised. *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 53, 756 N.E.2d 902, 907 (2001). The due process clause of the fourteenth amendment to the federal constitution limits the instances in which a state may assert personal jurisdiction over a nonresident corporate defendant. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d 190, 197, 429 N.E.2d 847, 850 (1981). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties or relations.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 85 L. Ed. 2d 528, 540, 105 S. Ct. 2174, 2181 (1985), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154, 160 (1945). Thus, the plaintiff's burden is to demonstrate that the out-of-state defendant has had the necessary minimum contacts with the forum state. *Reimer v. KSL Recreation Corp.*, 348 Ill. App. 3d 26, 33-34, 807 N.E.2d 1004, 1011 (2004). The minimum contacts standard ensures that "requiring the out-of-state resident to defend in the forum does not ' "offend traditional notions of fair play and substantial justice." ' " *Borden Chemicals & Plastics, L.P. v. Zehnder*, 312 Ill. App. 3d 35, 41,

4

726 N.E.2d 73, 78 (2000), quoting *International Shoe*, 326 U.S. at 316, 90 L. Ed. at 102, 66 S. Ct. at 158, quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343 (1940). The minimum contacts analysis must be based on some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, in order to assure that a nonresident will not be haled into a forum solely as a result of random, fortuitous, or attenuated contacts with the forum or the unilateral acts of a consumer or some other third person. *Burger King*, 471 U.S. at 475, 85 L. Ed. at 542, 105 S. Ct. at 2183.

The meaning of the minimum contacts standard depends on whether a court is asserting general jurisdiction or specific jurisdiction over the out-of-state defendant. *Borden Chemicals*, 312 Ill. App. 3d at 41, 726 N.E.2d at 78.

A court may potentially assert specific jurisdiction over an out-of-state resident if the lawsuit arises out of or is connected to the defendant's purportedly wrongful activities within the forum state. *Borden Chemicals*, 312 Ill. App. 3d at 41, 726 N.E.2d at 79. When a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protections of that state, and so requiring it to respond to a suit in that state concerning those specific activities " 'can, in most instances, hardly be said to be undue.' " *Borden Chemicals*, 312 Ill. App. 3d at 42, 726 N.E.2d at 79, quoting

1-05-3457

*International Shoe*, 326 U.S. at 319, 90 L. Ed. at 104, 66 S. Ct. at 160. The Rosiers' lawsuit is not based on any activity within Illinois; therefore, specific jurisdiction principles are not relevant to their appeal.

When a suit neither arises from nor relates to a defendant's activities within the state where suit has been filed, the court is limited to exercising general jurisdiction over the out-of-state defendant. *Borden Chemicals*, 312 Ill. App. 3d at 41, 726 N.E.2d at 78. Federal standards permit a court to exercise general jurisdiction over a nonresident only where the nonresident has continuous and systematic general business contacts with the forum. *Borden Chemicals*, 312 Ill. App. 3d at 41, 726 N.E.2d at 78-79. In addition, Illinois limits general jurisdiction over nonresidents to instances in which the nonresident was " 'present and doing business' " in the forum. *Reimer*, 348 Ill. App. 3d at 34, 807 N.E.2d at 1012, quoting *Braband v. Beech Aircraft Corp.*, 72 Ill. 2d 548, 554-55, 382 N.E.2d 252, 255 (1978). The doing business standard requires a nonresident defendant to carry on business activity in Illinois " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " *Maunder v. DeHavilland Aircraft of Canada, Ltd.*, 102 Ill. 2d 342, 351, 466 N.E.2d 217, 221 (1984), quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). The doing business standard is quite high and generally "means conducting business in Illinois of such

6

character and extent that it may be inferred that the defendant has subjected itself to the jurisdiction and laws of this state and is bound to appear when properly served." *Reimer*, 348 Ill. App. 3d at 35, 807 N.E.2d at 1012. "In effect, the foreign corporation has taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities in Illinois." *Reimer*, 348 Ill. App. 3d at 35, 807 N.E.2d at 1013.

The Rosiers rely primarily on *Adams v. Harrah's Maryland Heights Corp.*, 338 Ill. App. 3d 745, 789 N.E.2d 426 (2003), to sustain their burden of establishing that general jurisdiction is properly asserted over the nonresident corporations. We do not find *Adams'* analysis particularly persuasive because it relied primarily on specific jurisdiction case law and principles to determine whether general jurisdiction was properly asserted over a Missouri defendant. See *Adams*, 338 Ill. App. 3d at 747-50, 789 N.E.2d at 539-41, citing *Flint v. Court Appointed Special Advocates of Du Page County, Inc.*, 285 Ill. App. 3d 152, 169, 674 N.E.2d 831, 834 (finding "[defendant] NCASAA's contacts within Illinois are sufficiently related to the cause of action against them and, at least in part, gave rise to it"); *Allerion, Inc. v. Nueva Icacos, S.A. de C.V.*, 283 Ill. App. 3d 40, 52, 669 N.E.2d 1158, 1166 (1996) (finding it was "not unfair to bring [the defendant] 'into an Illinois court to enforce the [contractual] obligations [the defendant] knowingly undertook"); *Burger King*

1-05-3457

*Corp.*, 471 U.S. 462, 85 L. Ed. 528, 105 S. Ct. 2174 (finding contract negotiation, contemplated future consequences, terms of contract, and course of dealing justified bringing Michigan residents to Florida to answer breach of franchise contract); *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990) (finding Missouri police officer could not be haled into Illinois on the basis of his allegedly tortious act in Illinois).

Nevertheless, the Wisconsin defendants' contacts with Illinois are substantially less than those described in *Adams*. The defendant in *Adams*, a Missouri casino, maintained a "gold card holder" program (*Adams*, 338 Ill. App.3d at 748-49, 789 N.E.2d at 440), which presumably encouraged customers to maintain a continuing relationship with the Missouri gaming facility. In fact, about 64,000 individuals, which was approximately one-third of all the defendant's gold card holders, were from Illinois. *Adams*, 338 Ill. App. 3d at 748-49, 789 N.E.2d at 440. In addition, the defendant provided a free, regular shuttle bus service to physically transport Illinois residents from this jurisdiction to its Missouri site. *Adams*, 338 Ill. App. 3d at 748-49, 789 N.E.2d at 440. The defendant also directed magazine, television, radio, and telephone book ads, as well as flyers, brochures, and coupons to Illinois residents to lure them into continuing relationships. *Adams*, 338 Ill. App. 3d at 748-49, 789 N.E.2d at 400. In light of the "continuous and systematic

8

1-05-3457

business contacts" directed at the Illinois marketplace, the volume of Illinois customers, and the shuttle service from Illinois to Missouri, the court concluded it was reasonable for Illinois courts to exercise jurisdiction over the Missouri defendant. *Adams*, 338 Ill. App. 3d at 749, 789 N.E.2d at 441. While the record indicates the Wisconsin defendants advertise in Illinois, sometimes appear at Illinois trade shows, maintain an Illinois telephone number, and derive some revenue from the residents of this state, these contacts amount to mere solicitation to do business in Wisconsin, which is an insufficient basis for inferring that the Wisconsin defendants have subjected themselves to the jurisdiction of the Illinois courts. Maintaining an Illinois telephone number is not enough to sustain jurisdiction. *Radosta v. Devil's Head Ski Lodge*, 172 Ill. App. 3d 289, 295, 526 N.E.2d 561, 565 (1988). Nor is soliciting Illinois residents to transact business in Wisconsin, through a booth at a trade show, magazine advertisements, and radio broadcasts. *Radosta*, 172 Ill. App. 3d at 295, 526 N.E.2d at 565; *Dal Ponte v. Northern Manitoba Native Lodges, Inc.*, 220 Ill. App. 3d 878, 884, 581 N.E.2d 329, 333 (1991). Furthermore, the Wisconsin defendants do not continuously and systematically physically transport Illinois residents from Illinois to their Portage, Wisconsin, ski and snowboarding facilities and, thus, are not comparable to the Missouri defendant in *Adams*. *Adams*, 338 Ill. App. 3d at 748-49, 789 N.E.2d at 540.

9

1-05-3457

The Rosiers also argue that Cascade Mountain's presence on the Internet is significant for the purposes of acquiring jurisdiction over a nonresident defendant and support this argument with discussion of *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000) and *George S. May International Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 1052 (N.D Ill. 2006). The Rosiers contend individuals may use the Cascade Mountain website to subscribe to e-mail bulletins from the defendants and that the site "provides for online purchase of gift certificates, season passes, insurance and equipment rental" and that these items range in price "from $5 to $999." We find the e-mail bulletins are analogous to other advertising mediums the defendants use in this jurisdiction, such as radio and magazine advertising, and that the e-mail messages at most solicit Illinois residents to transact business in Wisconsin and are not a basis for exercising jurisdiction in this forum. In addition, the Rosiers overlook dispositive distinctions in *Euromarket Designs* and *George S. May International*. The Rosiers contend the Cascade Mountain website "provide[s] for online purchase[s]" but fail to offer evidence that the website is being used for actual purchases. This failure is significant not only because the plaintiffs bear the burden of demonstrating the necessary minimum contacts to support general jurisdiction, but also because in *Euromarket Designs*, the court remarked that generally a defendant's "mere maintenance of

10

an Internet website is not sufficient activity to exercise general jurisdiction over the defendant." *Euromarket Designs*, 96 F. Supp. 2d at 833. More importantly, this remark was offered only in passing and the court's analysis focuses on whether it had specific personal jurisdiction rather than general personal jurisdiction over the foreign defendant due to the defendant's Internet and non-Internet activities. *Euromarket Designs*, 96 Supp. 2d at 833-39. The Rosiers, however, disregard these indications that *Euromarket Designs* is not supportive of their appeal. The Rosiers also fail to acknowledge that *George S. May International* was an action primarily for trade libel and deceptive business practices and that the court determined it had specific jurisdiction over the non-resident defendants based on defamatory statements posted on their website. *George S. May International*, 409 F. Supp. 2d at 1054. After extensive discussion supporting its finding of specific jurisdiction (*George S. May International*, 409 F. Supp. 2d at 1057-60), the court briefly stated that it was also proper to find the existence of general jurisdiction based on the defendant's "continuous and systematic" contacts with Illinois. *George S. May International*, 409 F. Supp. 2d at 1060. Unlike the Rosiers, the plaintiff in that case demonstrated that the defendants had engaged in actual commerce through their website. The court cited the specific number of commercial transactions with Illinois residents -- 47 donations were made in Illinois in

11

1-05-3457

response to the defendants' solicitations and 13 Illinois residents bought books. *George S. May International*, 409 F. Supp. at 1059. In contrast, the Rosiers only contend the Cascade Mountain website is a means to transact business. In short, the Rosiers fail to provide factual or legal support for their contention that Cascade Mountain's presence on the Internet is a basis for exerting general jurisdiction over the nonresident defendants.

We also reject the Rosiers' contention that the trial court should have "pierced the corporate veil" of the Cascade Mountain and Walz Family corporations in order to find jurisdiction over the corporations. The Rosiers are referring to an equitable remedy under which a court may find a corporation's shareholders, directors, or officers -- who are not as a general rule liable for any corporate debts and obligations -- personally liable for the corporation's debts and obligations. *Ted Harrison Oil Co. v. Dokka*, 247 Ill. App. 3d 791, 795, 617 N.E.2d 898, 901 (1993). We emphasize that the Rosiers' complaint did not suggest in any way that they were attempting to hold individual shareholders, directors, or officers personally liable for Steven's injuries. There were no allegations in the complaint regarding the conduct of any individual. The Rosiers, however, argued the corporate veil theory was an alternate means for the trial court to acquire jurisdiction over the defendant Wisconsin corporations, and that

12

if the court found the Rosiers' evidence was lacking, it should permit the Rosiers to pursue additional discovery on the issue. The written order on appeal does not specify the trial court's reason or reasons for finding it had general personal jurisdiction over the Wisconsin defendants, and neither side has tendered a transcript of the hearing. Nevertheless, the Rosiers' appellate brief suggests the court indicated in some way that it did not find the corporate veil theory persuasive.

The remedy of disregarding or piercing the corporate veil in order to get to assets held by an individual will be employed where there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and where adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *People v. V & M Industries, Inc.*, 298 Ill. App. 3d 733, 739, 700 N.E.2d 746, 750 (1998). The party seeking to disregard the corporate entity must make "a substantial showing that the corporation is really a dummy or sham for a dominating personality." *Ted Harrison Oil Co.*, 247 Ill. App. 3d at 796, 617 N.E.2d at 902. A trial court should be reluctant to pierce the corporate veil, and its finding will be reversed on appeal only where it is against the manifest weight of the evidence. *Ted Harrison Oil Co.*, 247 Ill. App. 3d at 796, 617 N.E.2d at 902.

One of the cases the Rosiers' rely upon, *V & M Industries*,

illustrates the proper application of the concept.  In that case, the State sought injunctive relief and civil penalties under the Illinois Environmental Protection Act (415 ILCS 5/1 *et seq*. (West 1994)) after approximately 40,000 to 50,000 tires burned on property owned by a corporation.  *V & M Industries*, 298 Ill. App. 3d at 734, 700 N.E.2d at 747.  The fire burned for nearly a week, despite the efforts of numerous firefighters, and produced huge black smoke clouds and the emission of human carcinogens and deadly poisons.  *V & M Industries*, 298 Ill. App. 3d at 734, 700 N.E.2d at 747.  The burn area, a corner measuring 150 feet by 150 feet, was the only asset the corporation owned when the fire occurred.  *V & M Industries*, 298 Ill. App. 3d at 742, 700 N.E.2d at 753.  Vernon, the dominant shareholder, had piled all the tires into that corner (*V & M Industries*, 298 Ill. App. 3d at 738, 700 N.E.2d at 749) and the corporation's remaining 14 acres had been put into a land trust with Vernon as beneficiary.  *V & M Industries*, 298 Ill. App. 3d at 742, 700 N.E.2d at 753.  The corporation was dissolved after the fire.  *V & M Industries*, 298 Ill. App. 3d at 734, 700 N.E.2d at 747.

The court determined, however, that Vernon should be held personally liable for the corporation's debt because each of the eight relevant factors was present.  *V & M Industries*, 298 Ill. App. 3d at 740, 700 N.E.2d at 751.  A party seeking to rely on the corporate veil theory need not prevail on all eight factors, and no single factor is dispositive, but a court should take all

of the variables into consideration.  See, *e.g.*, *V & M Industries*, 298 Ill. App. 3d at 740, 700 N.E.2d at 751.  The court found (1) the corporation was undercapitalized for the transactions that needed to be performed, such as buying real estate to be leased to others and contracting for property maintenance, (2) the corporation was insolvent when the court considered the factors, (3) no stock was ever issued, (4) no shareholder dividends were paid, (5) corporate formalities such as regular meetings and minute taking were never observed, (6) there was an absence of corporate records, and (7) other than the dominant shareholder, Vernon, none of the corporate officers and directors functioned in their roles.  Finally, (8) the corporation was a "mere facade for the operation of the dominant shareholder, Vernon," and "Vernon is *** V & M," as evidenced in part by the fact that checks owed to the corporation totaling $100,000 were made payable to Vernon, personally, and vice versa. *V & M Industries*, 298 Ill. App. 3d at 740-42, 700 N.E.2d at 751-52.  These facts led the court to conclude, "[t]he circumstances in this case are overwhelming to the point that adherence to the fiction of a separate corporate existence would indeed sanction a fraud, promote injustice, and promote inequitable consequences." *V & M Industries*, 298 Ill. App. 3d at 742, 700 N.E.2d at 753.

The Rosiers cite other instances in which corporate status has been disregarded and individuals associated with the corporation have been held personally liable for judgments.  See

15

1-05-3457

*Falcon Associates, Inc. v. Cox*, 298 Ill. App. 3d 652, 664, 699 N.E.2d 203, 211 (1998) (relevant factors including no stock issuance, no dividend payments, and transfer of all corporate assets to a second corporation after dispute arose supported conclusion that homebuilder-seller corporation, its president, and second corporation should be treated as "but one single entity" for purposes of liability); *Washington Courte Condominium Ass'n -- Four v. Washington-Gulf Corp.*, 267 Ill. App. 3d 790, 816-17, 643 N.E.2d 199, 217 (1994)  (in dispute over condominium sale, court indicated, "[t]he record shows such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer existed and *** adherence to the separate corporate existence would sanction a fraud, promote injustice and promote inequitable consequences").

Thus, the Rosiers have demonstrated there are circumstances under which a court may and will find corporate shareholders, directors, or officers personally liable for corporate obligations.  The Rosiers have not, however, offered any legal authority or any reasoned argument indicating a court may scrutinize the local contacts of a foreign corporation's shareholders, directors, or officers in order to find that the foreign corporation is subject to the court's personal jurisdiction.  Accordingly, we find the Rosiers have waived consideration of their contention that the corporate veil theory is a means or should be a means of exerting general personal

16

jurisdiction over a nonresident defendant.  188 Ill. 2d R. 341(e)(7); *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 78, 704 N.E.2d 830, 842 (1998) (Supreme Court Rule 341(e)(7) requires proponent to cite supporting authority and failure to do so results in waiver).

In summary, all that defendants have done in this forum is solicit business, absorb some of the expenses associated with accessing a prerecorded announcement of snow conditions, and borrow money.  The defendant or defendants have created a website which is a potential means for transacting business in Illinois, but the record does not disclose any transactions with Illinois residents.  The Rosiers chose to initiate contact with the non-Illinois defendants and chose to travel to Portage, Wisconsin, to make use of the defendants' ski and snowboarding facilities.  It would not be consistent with due process to require the Wisconsin defendants to litigate the resulting dispute in Illinois.  The contacts the defendants have with Illinois are not sufficient for its courts to exercise general personal jurisdiction over the Wisconsin entities.  The Rosiers' alternative argument that piercing the corporate veil is an appropriate means of acquiring jurisdiction over a non-Illinois corporation is not supported by adequate legal reasoning and citation to supporting authority, and therefore did not merit our consideration.  Because the plaintiff Rosiers did not meet their burden of proving that *in personam* jurisdiction exists over the nonresident defendants, we

17

1-05-3457

reverse the trial court's order denying the motion to quash service and dismiss the complaint.

Reversed.

CAHILL and JOSEPH GORDON, JJ., concur.