# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Russell v. SNFA*, 2011 IL App (1st) 093012-B

---

| | |
|---|---|
| Appellate Court Caption | JOHN RUSSELL, as Executor of the Estate of Michael Russell, Deceased, Plaintiff-Appellant, v. SNFA, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-09-3012 |
| Filed | December 16, 2011 |
| Rehearing denied | January 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An action arising from the death of plaintiff's brother in a helicopter crash that occurred in Illinois was improperly dismissed on the ground that the French company that made a part that allegedly caused the crash was not subject to the jurisdiction of the Illinois court, since the decedent was employed by a medical air service doing business primarily in Illinois, and the requisite minimum contacts existed where the malfunction of the custom-made, tail-rotor, drive-shaft bearings made by defendant occurred in Illinois, defendant had reason to know and expect that its bearings would be marketed in all states, including Illinois, and the Illinois sales were sufficient to establish minimum contacts, and furthermore, it was reasonable for Illinois to exercise personal jurisdiction over defendant and the exercise of jurisdiction complied with the due process clause of the Illinois Constitution. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-L-1112; the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Todd A. Smith and Brian LaCien, both of Powers Rogers & Smith, P.C., of Chicago, for appellant. |
|---|---|
| | Robert Marc Chemers and Scott L. Howie, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE R. GORDON delivered the judgment of the court, with opinion. |
| | Justices McBride and Lampkin concurred in the judgment and opinion. |

## OPINION

¶ 1     Plaintiff's brother died during a helicopter crash in Illinois. Defendant SNFA, a French company, made a part for that helicopter, which plaintiff claims was defective and the cause of the crash. Defendant moved to dismiss on the ground that Illinois had no jurisdiction over it, and the trial court dismissed for lack of personal jurisdiction. For the reasons discussed below, we reverse and remand for further proceedings consistent with this opinion.

¶ 2     The Illinois Supreme Court directed us to reconsider our opinion in this case in light of two opinions subsequently decided by the United States Supreme Court: *J. McIntyre Machinery, Ltd. v. Nicastro*, ___ U.S. ___, 131 S. Ct. 2780 (2011), and *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846 (2011). *Russell v. SNFA*, No. 112323 (Ill. Sept. 28, 2011) (supervisory order). We have reconsidered and find that these opinions only strengthen our conclusions.

¶ 3                              BACKGROUND
¶ 4                              I. The Parties
¶ 5     On January 28, 2003, Michael Russell (Russell) died during a helicopter crash in Illinois. Russell, who was the pilot and sole occupant, was working for Air Angels, a medical air service that did business primarily in Illinois and, in particular, Cook County. Russell died leaving a wife and two sons. Plaintiff John Russell (plaintiff) is Michael Russell's brother and the executor of Michael Russell's estate.

¶ 6     In his complaint, plaintiff alleged that the crash was caused, specifically, by the failure of one of the helicopter's tail-rotor drive-shaft bearings, which defendant manufactured. Plaintiff alleged that, as a result of this failure, the drive shaft fractured, leaving the tail rotor inoperable. The helicopter then spun out of control, crashing to the ground.

¶ 7     Defendant is a French manufacturer of both custom-made aerospace bearings and helicopter tail-rotor bearings.

¶ 8                                   II. The Product at Issue

¶ 9        In its brief to this court, defendant admitted the following facts.

¶ 10       The helicopter involved in the accident was an A 109 helicopter manufactured by Agusta S.p.A. (Agusta) in Italy in 1989. The helicopter contained seven tail-rotor bearings manufactured by defendant. These bearings were custom-made by defendant for use in Agusta's A 109 helicopters. The helicopter in question had several owners and operators. In 1998, a German company sold it to Metro Aviation in Louisiana, which in turn sold it to Air Angels, which was Russell's employer at the time of the crash.

¶ 11       In 1998 and again in 2002, Metro Aviation replaced some of the bearings. The replacement bearings had been manufactured by defendant in France, and then sold to Agusta in Italy, which in turn sold them to its American subsidiary, Agusta Aerospace Corporation (Agusta AC), which then sold them to Metro Aviation in Louisiana. Defendant acknowledges that Agusta AC sells SNFA's custom-made bearings to owners of A 109 aircraft around the world.

¶ 12       Specifically for Agusta, defendant manufactures several different custom-made tail-rotor bearings. Agusta provides defendant with precise specifications, and defendant manufactures the bearings according to those specifications. Defendant acknowledges that it knows that its custom-made tail-rotor bearings are incorporated by Agusta into helicopters and also sold as individual replacement parts.

¶ 13       Defendant states that it is in the business of providing custom-made bearings, mostly to European customers. Defendant manufactures custom-made bearings for both the aerospace industry and for helicopters. Defendant claims that it has no American customers for its helicopter bearings, but admits that it does have three American customers for its aerospace bearings: (1) Rolls Royce, a jet-engine manufacturer; (2) Honeywell, an engine manufacturer; and (3) Hamilton Sundstrand, a subsidiary of United Technologies Corporation.


¶ 14                                  III. Orders Appealed From

¶ 15       On August 26, 2010, the trial court granted defendant's motion to dismiss for lack of personal jurisdiction, but it stayed the order. The trial court's written order stated that its ruling was "made in accordance w/ [*sic*] transcript." In open court, the trial court explained, as follows, why it rejected plaintiff's claim that defendant was doing business in Illinois:

        "Now, in the case before me, there is no office, there is no showing whatsoever of the derivation of a substantial portion of overall business in Illinois.

        There is only the most minimal showing of physical presence in Illinois. Two visits are discussed, but only one of those visits falls within the parameter of which the cases say the Court should consider, in determining the existence of general jurisdiction. ***

        So, I selected a slightly broader period of two-and-a-half years, but the first visit was in 2000, and the accident didn't occur [until] 2003.

        So, during the relevant period, we have a single visit of a SNFA representative to Hamilton Sundstrand in Rockford, and we have invoicing done through Rockford, although the product, itself, was shipped to San Diego.

At best, we have a decent dollar amount of sales reflected in the invoices, not quite a million dollars, if I rely on that figure in that contract that I mentioned.

Whereas, in *Riemer* [*v. KSL Recreation Corp.*, 348 Ill. App. 3d 26 (2004)], $6 million in sales by a much smaller company than SNFA were held insufficient, and the Court found a lack of general jurisdiction in that case.

So, my conclusion is that the plaintiff in this case has failed to meet its burden of showing continuous and systematic presence in Illinois."

¶ 16    In open court, the trial court also explained why it rejected plaintiff's claim that the court had jurisdiction over defendant due to the fact that the helicopter crashed in Illinois:

"[I]f the plaintiff was to make a case at all, it had to be based on general jurisdiction, simply because the [helicopter] accident didn't arise out of their Illinois contacts.

So, it doesn't meet–putting aside the question of purposefully-directed activity, [the accident] simply did not arise out of the Illinois activity."

¶ 17    On September 24, 2008, the trial court found that there was no just reason to delay either enforcement or appeal of its ruling. Plaintiff filed a notice of appeal, appealing the orders dated August 26, 2009, and September 24, 2009, as well as earlier orders related to discovery. This appeal followed.

¶ 18                                   ANALYSIS

¶ 19                              I. Standard of Review

¶ 20    "The plaintiff bears the burden of establishing a *prima facie* basis upon which jurisdiction over an out-of-state resident may be exercised." *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 561 (2006); *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 846 (2001); *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 53-54 (2001). "If jurisdictional facts remain in controversy, then the court must conduct a hearing to resolve those disputes." *Knaus v. Guidry*, 389 Ill. App. 3d 804, 813 (2009). "When the circuit court decides a jurisdictional question solely on the basis of documentary evidence" and without an evidentiary hearing, as it did in this case, then "the question is addressed *de novo* on appeal." *Roiser*, 367 Ill. App. 3d at 561; *Alderson*, 321 Ill. App. 3d at 846. On appeal, we must "resolve in favor of the plaintiff any conflicts in the pleadings and affidavits." *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1080 (2010). If we find that plaintiff has made a *prima facie* case for jurisdiction, we must then determine if any material evidentiary conflicts exist. *MacNeil*, 401 Ill. App. 3d at 1080. If a material evidentiary conflict exists, we must remand the case to the trial court for an evidentiary hearing. *MacNeil*, 401 Ill. App. 3d at 1080.

¶ 21                  II. Applicable Statutory and Constitutional Provisions

¶ 22    Section 2-209 of the Code of Civil Procedure (735 ILCS 5/2-209 (West 2002)) sets forth when Illinois courts will exercise personal jurisdiction over a defendant. Subsection (a), which governs specific jurisdiction, lists 14 different actions by a defendant which will subject him or her to Illinois jurisdiction. 735 ILCS 5/2-209(a)(1) through (a)(14) (West 2002). A defendant is subject to jurisdiction for "any cause of action arising from the doing

-4-

of any" of these "acts," which include the transaction of business or the commission of a tort. 735 ILCS 5/2-209(a)(1) through (a)(14) (West 2002). Subsection (b), which governs general jurisdiction, lists four grounds, only two of which apply to corporations: "(3) *** a corporation organized under the laws of this State; or (4) *** [a] corporation doing business within this State." 735 ILCS 5/2-209(b)(3), (b)(4) (West 2002). Subsection (c) is a "catchall provision" which permits Illinois courts to " 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Roiser,* 367 Ill. App. 3d at 561 (quoting 735 ILCS 5/2-209(c) (West 2002)). Subsection (c) permits an Illinois court to exercise personal jurisdiction to the extent permitted by the due process clause of the fourteenth amendment to the United States Constitution. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (Illinois long-arm statute was amended in 1989 to add subsection (c), which is "coextensive with the due process requirements of the United States Constitution").

¶ 23 An exercise of jurisdiction under any of the three statutory subsections must also comport with the due process clause. The due process clause limits a state's exercise of personal jurisdiction over a nonresident defendant to those instances where the defendant had at least "minimum contacts" with the state. *Roiser,* 367 Ill. App. 3d at 561. This court has described the minimum contacts standard as follows:

"The minimum contacts standard ensures that requiring the out-of-state resident to defend in the forum does not ' "offend traditional notions of fair play and substantial justice." ' [Citation.] The minimum contacts analysis must be based on some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, in order to assure that a nonresident will not be haled into a forum solely as a result of random, fortuitous, or attenuated contacts with the forum or the unilateral acts of a consumer or some other third person." (Internal quotation marks omitted.) *Roiser*, 367 Ill. App. 3d at 561-62.

¶ 24 This year, a unanimous United States Supreme Court in *Goodyear* reaffirmed its adherence to the minimum contacts test. *Goodyear*, ___ U.S. at ___,131 S. Ct. at 2853. The minimum contacts needed for jurisdiction depends on whether the jurisdiction asserted is general or specific jurisdiction. *Goodyear*, ___ U.S. at ___, 131 S. Ct. at 2853-54; *MacNeil*, 401 Ill. App. 3d at 1081. General jurisdiction exists when defendant's general business contacts with the forum state are continuous and systematic. *Goodyear*, ___ U.S. at ___, 131 S. Ct. at 2851; *Knaus*, 389 Ill. App. 3d at 814; *MacNeil*, 401 Ill. App. 3d at 1081. See also *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 415 (1984). Specific jurisdiction exists when the cause of action arose out of defendant's contacts with the forum state. *Goodyear*, ___ U.S. at ___, 131 S. Ct. at 2853; *Knaus*, 389 Ill. App. 3d at 814; *MacNeil*, 401 Ill. App. 3d at 1081. See also *Helicopteros,* 466 U.S. at 414 & n.8.

¶ 25 In the case at bar, plaintiff claimed that this court could exercise jurisdiction under subsection (a), (b) or (c). Plaintiff claimed that this court had specific jurisdiction, under subsection a, because of "[t]he commission of a tortious act within this State." 735 ILCS 5/2-209(a)(2) (West 2002). Plaintiff also claimed that this court had general jurisdiction under subsection (b), because defendant was a "corporation doing business within this State." 735 ILCS 5/2-209(b)(4) (West 2002). Last, but not least, plaintiff claimed that this court could

exercise jurisdiction under the catchall provision of subsection (c). 735 ILCS 5/2-209(c) (West 2002). As noted above, the trial court rejected plaintiff's claims of jurisdiction under subsections (a) and (b), but did not make a specific ruling with respect to subsection (c).

¶ 26                                 III. Minimum Contacts

¶ 27      For the reasons discussed below, we find that the court had specific jurisdiction over defendant, under both subsections (a) and (c). 735 ILCS 5/2-209(a)(2), (c) (West 2002). Since we find that jurisdiction exists under these subsections, we do not review plaintiff's claim of general jurisdiction under subsection b. In addition, "[w]hile defendant has contested some of the facts asserted by plaintiff, the facts relied on by this court in finding specific personal jurisdiction are not contested by defendant." *Bell v. Don Prudhomme Racing, Inc.*, 405 Ill. App. 3d 223, 234 (2010). As a result, there is no need to remand for an evidentiary hearing. *Bell*, 405 Ill. App. 3d at 234.

¶ 28      With specific jurisdiction, a nonresident defendant has minimum contacts with the forum state, when the defendant has purposefully directed its activities at the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. *Goodyear*, ___ U.S. at ___, 131 S. Ct. at 2853-54; *Bell*, 405 Ill. App. 3d at 231 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

¶ 29      For a tort action, the state in which the injury occurs is then considered to be the state in which the tort occurred. *Bell*, 405 Ill. App. 3d at 231 (citing *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 412 (7th Cir. 1994), citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). See also *Goodyear*, ___ U.S. at ___, 131 S. Ct. at 2851 (North Carolina lacked specific jurisdiction over a tort action where the subject bus accident occurred in France); *MacNeil*, 401 Ill. App. 3d at 1084 (" 'For purposes of the tort provision of the long-arm statute, the place of the wrong is the place where the last event necessary to hold the actor liable takes place. [Citation.]' " (quoting *Arthur Young & Co. v. Bremer*, 197 Ill. App. 3d 30, 36 (1990))). "The Seventh Circuit has repeatedly held that tortfeasors must expect to be haled into Illinois courts for torts where the injury took place there." *ABN AMRO, Inc. v. Capital International Ltd.*, 595 F. Supp. 2d 805, 828 (N.D. Ill. 2008) (mem. op.). In the case at bar, the injury occurred in Illinois, and thus Illinois is the state in which the tort occurred. *Cf. Helicopteros*, 466 U.S. at 415 (finding that a wrongful death claim did not arise out of defendant's activities in Texas, where the helicopter crash occurred in Peru and not Texas).

¶ 30      In the case at bar, both parties cited the United States Supreme Court's decision in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), as the high court's most recent, relevant statement about minimum contacts, but they disagreed about what *Asahi* means, and how it should be applied to the facts of our case. Since that time, the United States Supreme Court has taken up the issue of minimum contacts again, in both *Goodyear* and *McIntyre*. Of these two cases, *McIntyre* is the more relevant to our case because, like our holding today, it is based on specific jurisdiction. *McIntyre*, ___ U.S. at ___, 131 S. Ct. at 2788. Although the Court in *Goodyear* reiterated the basic principles of minium contacts and general-versus-specific jurisdiction, the issue in *Goodyear* was whether general jurisdiction existed.

*Goodyear*, ___ U.S. at ___, 131 S. Ct. at 2851(sole issue was whether the corporations were "amenable to general jurisdiction in North Carolina"). Thus, *McIntyre* is more applicable to our decision.

¶ 31 In the discussion below, we will consider first *Asahi* and then *McIntyre* and explain how these two cases apply to the facts at hand. Even though *McIntyre* is the more recent case, we still pay close attention to *Asahi*, because the vitality of *Asahi* was reaffirmed by all nine justices in *McIntyre*. *McIntyre*, ___ U.S. at ___, 131 S. Ct. at 2788-89 (four-justice plurality opinion discussing *Asahi*), 2792 (two-justice concurrence citing *Asahi* with approval), 2803 (three-justice dissent citing *Asahi* with approval).

¶ 32 *Asahi* concerned a cause of action only for indemnification. *Asahi*, 480 U.S. at 106 (the accident victim's claims were "eventually settled and dismissed, leaving only [an] indemnity action"). A plaintiff, who was injured in a motorcycle accident in California, sued the Taiwanese manufacturer of the motorcycle's inner tubes. *Asahi*, 480 U.S. at 105-06. The Taiwanese tube manufacturer, in turn, filed a cross-complaint for indemnification against Asahi, the Japanese manufacturer of the tube's valve assembly. *Asahi*, 480 U.S. at 106. The only question before the Court was whether a California court should exercise personal jurisdiction in order to require a Japanese submanufacturer to indemnify a Taiwanese manufacturer. *Asahi*, 480 U.S. at 115. All nine justices answered no.

¶ 33 All nine justices found that, for a forum to exercise personal jurisdiction over a defendant, (1) the defendant must have minium contacts with the forum, and (2) it must be reasonable for the forum to exercise jurisdiction. *Asahi*, 480 U.S. at 112-14, 116, 121-22. All nine justices agreed that, in the case before them, the exercise of jurisdiction was not reasonable, and agreed on the factors that govern reasonableness.[1] *Asahi*, 480 U.S. at 113, 116, 121.

¶ 34 However, the justices disagreed about whether minimum contacts existed, on the facts before them. Four justices believed that minimum contacts did not exist. *Asahi*, 480 U.S. at 112-13. Four justices believed that "[t]his is one of those rare cases" in which minium contacts exist, but it would still be unreasonable to exert jurisdiction. *Asahi*, 480 U.S. at 116 (Brennan, J., concurring in part and concurring in the judgment, joined by White, Marshall, and Blackmun, JJ.) One justice believed that the Court should not even consider the issue of minimum contacts, since it could decide the case on reasonableness alone. *Asahi*, 480 U.S. at 121-22 (Stevens, J., concurring in part and concurring in the judgment, joined by White and Blackmun, JJ.).

¶ 35 Even the four justices who did not find minimum contacts cited with approval the decision of *Rockwell International Corp. v. Costruzioni Aeronautiche Giovanni Agusta, S.p.A.*, 553 F. Supp. 328 (E.D. Pa. 1982) (mem. op.). *Asahi*, 480 U.S. at 113. Finding that there was no evidence that Asahi had "designed" its product in anticipation of sales in the forum state, they cited *Rockwell* as an example of where the opposite was true–where a defendant had designed its product in anticipation of sales in the forum state. *Asahi*, 480 U.S. at 113.

---

[1]We discuss reasonableness, below, in the following section of this opinion.

¶ 36    The defendant in *Rockwell* was SNFA, the same defendant that is before us, and the facts in *Rockwell* are almost indistinguishable from the facts in our case. Like we hold today, the *Rockwell* court held that the forum state, which was the site of the crash, could exercise specific personal jurisdiction over defendant SNFA. *Rockwell*, 553 F. Supp. at 329. Exactly as in our case, defendant had custom-made bearings for an A 109 helicopter, manufactured by Agusta. *Rockwell*, 553 F. Supp. at 329. Exactly as in our case, a subsequent owner replaced the tail-rotor drive-shaft bearings with ones also manufactured by defendant. *Rockwell*, 553 F. Supp. at 330. Exactly as in our case, plaintiff alleged that the bearings and the drive shaft failed, causing the helicopter to crash. *Rockwell*, 553 F. Supp. at 330. Exactly as in our case, the forum state in *Rockwell* had a long-arm statute with a subsection that authorized the exercise of personal jurisdiction to the fullest extent allowed by the due process clause. *Rockwell*, 553 F. Supp. at 330.

¶ 37    First, the *Rockwell* court found that the cause of action arose from defendant's activity in the state. *Rockwell*, 553 F. Supp. at 331. Specifically, it found that the "cause of action is traced from the sale of the ball bearings by SNFA, through its chain of distribution, to the apparent malfunction that allegedly caused the helicopter to crash." *Rockwell*, 553 F. Supp. at 331. As a result, the court concluded that the "sale, malfunction and injury all occurred within" the forum state. *Rockwell*, 553 F. Supp. at 331. As in our case, the malfunction and the injury indisputably occurred in the forum state.

¶ 38    In addition, the *Rockwell* court reached the conclusion that the sale occurred in the forum state, even though the bearings had traveled through a similar distribution network as the bearings in our case–a sale by defendant to Agusta in Italy, a sale by Agusta to its American distributor, and then a sale to an American consumer. *Rockwell*, 553 F. Supp. at 329, 331. The fact that the consumer sale in *Rockwell* took place in Pennsylvania, the crash site, whereas the consumer sale in our case took place in Louisiana is of no import, since defendant is not suggesting that jurisdiction in Louisiana would be proper.

¶ 39    Second, the *Rockwell* court found that minimum contacts existed. Defendant argued against minimum contacts claiming, exactly as it does in our case, that its sales of ball bearings to Agusta were confined to Europe and that a court should not blur the distinction between Agusta and defendant. *Rockwell*, 553 F. Supp. at 331. The *Rockwell* court rejected that claim, as we do now. "[B]ecause the ball bearings are custom-made, SNFA intended its products to be an inseparable part of the marketing plan of Agusta." *Rockwell*, 553 F. Supp. at 332. Since "the bearing was uniquely designed for incorporation into Agusta's helicopter," SNFA had to distribute its product through Agusta's distributions system. *Rockwell*, 553 F. Supp. at 333. The demand for these bearings is dependent on the demand for Agusta's product containing SNFA bearings. Thus, SNFA benefitted, and intended to benefit, from Agusta's marketing and distribution.

¶ 40    SNFA does not deny that it knew that Agusta helicopters were sold throughout the United States. SNFA also does not deny that it knew that Agusta had an American subsidiary

for the purpose of American distribution.[2] "Given the distribution system, SNFA had ample reason to know and expect that its bearing, as a unique part of a larger product, would be marketed in *any* or *all* states, including [the forum state]." (Emphasis in original.) *Rockwell*, 553 F. Supp. at 333. "By virtue of having a component specifically designed for the Agusta helicopter, SNFA had a 'stake in,' and expected to derive definite benefit from sales of the Agusta A-109 (and replacement parts) in the United States." *Rockwell*, 553 F. Supp. at 333.

¶ 41 In essence, Agusta is the marketer and distributor to the consumer of their joint and ultimate product. SNFA has chosen to leave to Agusta the marketing and distribution to the consumer. Agusta is thus the conduit through which this SNFA product, custom-made for Agusta, reaches the ultimate consumers.

¶ 42 The facts of *Asahi* are distinguishable from the facts at bar, as the *Asahi* Court itself recognized. *Asahi*, 480 U.S. at 113. Four justices found no minimum contacts by a Japanese component maker, which had sold a component to a Taiwanese manufacturer. *Asahi*, 480 U.S. at 106. The Court found no jurisdiction since there was no evidence that the defendant before it had designed its product for the manufacturer. *Asahi*, 480 U.S. at 113. As the Court itself noted, the relationship between SNFA and Agusta is just the opposite. *Asahi*, 480 U.S. at 113 (citing *Rockwell*, 553 F. Supp. at 328).

¶ 43 Although *Rockwell* is not binding on us, we find its logic persuasive, as did the United States Supreme Court. The trial court erred in not recognizing that the tort occurred in Illinois and that the injuries related to defendant's activities directed toward the forum. For the reasons discussed above, we find that, under *Asahi*, minimum contacts existed.

¶ 44 Our conclusion is also supported by the United States Supreme Court's more recent decision in *McIntyre*. In *McIntyre*, the four justices in the plurality opinion found that a British manufacturer had not submitted itself to the authority of the forum state by using an American distributor, where there was only one sale to the forum state. *McIntyre*, ___ U.S. at ___, ___, 131 S. Ct. at 2786, 2790. The two concurring justices concurred in the judgment denying jurisdiction, but not with the plurality's reasoning which found that jurisdiction was more "a question of authority, rather than fairness." *McIntyre*, ___ U.S. at ___, ___, 131 S. Ct. at 2789 (plurality), 2794 (concurrence). The two concurring justices found that, although distribution by an American distributor could be sufficient for jurisdiction, it was not sufficient in the particular case before them because there was only "a single isolated sale." *McIntyre*, ___ U.S. at ___, 131 S. Ct. at 2792 (Breyer, J., concurring, joined by Alito, J.). The three dissenting justices found that a manufacturer's use of an American distributor in the states was sufficient to establish jurisdiction, even though there was only one sale in the forum state, where the manufacturer did not care where in the United States its products were sold. *McIntyre*, ___ U.S. at ___, 131 S. Ct. at 2794 (Ginsberg, J., dissenting, joined by Kagan

---

[2]Although we rely on the admissions that defendant made in this case and on this appeal, we observe that the *Rockwell* court also found that SNFA had "worked closely" with Agusta engineers to develop the ball bearings for the A 109 helicopter, and that SNFA was aware that the A 109 helicopter was "targeted" for the market in the United States, as well as Europe. *Rockwell*, 553 F. Supp. at 330.

& Sotomayor, JJ.).

¶ 45      Thus, in *McIntyre*, all the justices found that distribution by an American distributor in the states could be sufficient to establish jurisdiction, given the right set of facts. In the case at bar, plaintiff's interrogatory to Augusta AC, the American distributor, had asked Augusta AC to set forth "each entity to whom the Defendant has shipped SNFA/Augusta Products who then further distributed those SNFA/Augusta Product to entities in the State of Illinois during the past ten (10) years." In response, Augusta AC stated that it "sold approximately 2,198 SNFA-produced parts" between 2000 and the date of its response, March 26, 2007. Thus, insufficient sales is not an issue in the case before us, as it was in *McIntyre*. *Cf. Soria v. Chrysler Canada, Inc.*, 2011 IL App (2d) 101236, ¶¶ 6, 29 (post-*McIntyre*, a Canadian vehicle manufacturer was held to have minimum contacts with Illinois, when the Canadian manufacturer assembled vehicles according to the specifications of its American parent and distributor and when thousands of these vehicles were later sold in Illinois by independently owned dealerships).

¶ 46      In addition, during the same time period, five Augusta helicopters with SNFA parts were sold to entities in Illinois.[3] Since an expensive item like a helicopter is unlikely to be sold in mass quantities, the price of five helicopters represents significant sales in terms of dollar value. *Cf. McIntyre*, ___ U.S. at ___, 131 S. Ct. at 2803 n.15 (dissent). Thus, whether you measure sales in terms of quantity or dollar value, the sales to Illinois were sufficient to establish minimum contacts.

¶ 47      In sum, under the governing United States Supreme Court cases of *Asahi* and *McIntyre*, we find that defendant had minimum contacts with Illinois, the forum state.

¶ 48                          IV. Reasonableness

¶ 49      In addition to establishing defendant's minimum contacts with Illinois, plaintiff must show, to comply with federal due process, the reasonableness of our state's exercise of personal jurisdiction over defendant. *Asahi*, 480 U.S. at 113; *Bell*, 405 Ill. App. 3d at 233. To determine reasonableness, courts consider the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interest of the affected forums, including the forum state, in the most efficient resolution of the dispute; and (5) the interest of the affected forums in the advancement of substantive social policies. *Asahi*, 480 U.S. at 113; *Bell*, 405 Ill. App. 3d at 234.

¶ 50      In the case at bar, most of these factors favor finding jurisdiction in Illinois. First, Illinois

---

[3]In Augusta's supplemental response to plaintiff's sixth interrogatory question, Augusta stated that it had sold three helicopters with SNFA bearings to companies based in Elmhurst, Morton Grove and Grayslake, Illinois. In its amended response to plaintiff's seventh interrogatory question, Augusta stated that it had also sold two helicopters "titled to Merrill Lynch Business Financial Services, Inc, in Chicago, Illinois." Plaintiff in its opening appellate brief asserted that five helicopters were sold to entities in Illinois, and defendant did not contest that fact in its responding appellate brief.

has an interest in resolving a dispute concerning a helicopter crash and a death that occurred in Illinois, particularly when that tragedy concerns the provision of ambulance services to Illinois residents and citizens.[4] Second, plaintiff as executor has a strong interest in obtaining relief for his brother's estate. Third, as the crash site of an aircraft, Illinois has a strong interest in the efficient resolution of the resulting dispute. Fourth, Illinois also has a strong interest in advancing the substantive social policy of compensating victims for torts occurring in Illinois and of ensuring the safety of the air ambulance services utilized by its citizens. *Cf. McIntyre*, ___ U.S. at ___, 131 S. Ct. at 2798 (dissent) ("among States of the United States, the State in which the injury occurred would seem most suitable for litigation of a products liability tort claim").

¶ 51    In *Asahi*, our Supreme Court found reasonableness lacking where the suit was "about indemnification rather than safety standards." *Asahi*, 480 U.S. at 114-15. By contrast, the issue in our case is more about safety standards than indemnification.[5]

¶ 52    We recognize "the heavy burden on the alien defendant" of having to litigate on our soil. *Asahi*, 480 U.S. at 116. However, as the United States Supreme Court has held, this is not the only factor; and we find that all the other factors support a finding of reasonableness. See *Robillard v. Berends*, 371 Ill. App. 3d 10, 20 (2007) ("the applicable factors weigh in favor of the plaintiff's position").

¶ 53    In addition, we observe that "SNFA designed and manufactured a component that was incorporated into a product which was intended to be, and was, in fact, sold" in the United States. *Rockwell*, 553 F. Supp. at 334. "Where that component allegedly fails and causes injury in the very market in which the product was expected to be sold, it is not unreasonable or unfair to require the defendant to be subject to suit in that forum." *Rockwell*, 553 F. Supp. at 334.

¶ 54    For these reasons, we find it is reasonable for Illinois to exercise jurisdiction over

---

[4]In *Asahi*, the Supreme Court found that because "the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished." *Asahi*, 480 U.S. at 114. However, it is unclear who the Court meant by "plaintiff" in this context: (1) the accident victim or (2) the Taiwanese manufacturer seeking to assert jurisdiction over its Japanese submanufacturer in a cross-complaint. As the Court observed, California has less of an interest in the indemnification of a foreign plaintiff than in a tort on its own soil. *Asahi*, 480 U.S. at 114. In addition, in the case at bar, plaintiff's complaint alleges that the deceased was living in Illinois at the time of the crash. Defendant's appellate brief asserts, without citation to the record, that the deceased was a resident of Georgia. Although Illinois's interest might be augmented if the deceased was an Illinois citizen (*Asahi*, 480 U.S. at 114), we do not find that resolution of this factual issue is necessary to our resolution of this appeal.

[5]The United States Supreme Court found that, although pressure would be placed on a submanufacturer if the ultimate manufacturer was found liable for a defective part, "[t]he possibility of being haled into [an American] court as a result of an accident involving [the submanufacturer's] components undoubtedly creates an additional deterrent to the manufacture of unsafe components." *Asahi*, 480 U.S. at 115.

defendant.

¶ 55                    V. Illinois Due Process

¶ 56    Lastly, personal jurisdiction over defendant must also comply with the due process clause of the Illinois Constitution. *Bell*, 405 Ill. App. 3d at 234. The due process protections of the United States and Illinois Constitutions are not identical. *Knaus*, 389 Ill. App. 3d at 814; *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 386-87 (2005) (citing *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990)). Under our state's due process clause, an Illinois court may exercise jurisdiction "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur[red] in Illinois or which affect[ed] interests located in Illinois." *Rollins*, 141 Ill. 2d at 275 (1990). See also *Knaus*, 389 Ill. App. 3d at 815; *Bell*, 405 Ill. App. 3d at 234; *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 147 (2006) (finding that the Illinois due process clause permitted jurisdiction over the airplane's seller where the fatal flight began in Illinois, and thus involved "the safety of Illinois aircraft and air traffic").

¶ 57    Here, an aircraft crashed on Illinois soil; the aircraft was involved in providing ambulance services to Illinois citizens and residents; the allegedly defective part was custom-made by defendant for this model of aircraft; by custom-making parts for a helicopter manufacturer, defendant made itself dependent on the marketing and distribution network of the manufacturer; and it was reasonably foreseeable to defendant that it would be haled into an American forum, when it had previously been subject to jurisdiction for the alleged failure of the same part in the same model aircraft, manufactured by the same company.

¶ 58                          CONCLUSION

¶ 59    For the above reasons, we reverse the trial court's dismissal for lack of personal jurisdiction and remand for further proceedings consistent with this opinion.

¶ 60    Reversed and remanded.